**Edith Arbogast, Plaintiff-Appellee, v. John Fedorchak and Community Coach Company, Defendants-Appellants.**

Gen. No. 63–O–1.

Fourth District.

November 14, 1963.

Rehearing denied December 7, 1963.

Bernard & Davidson, of Granite City (Joseph Davidson, of counsel), for appellant, John Fedorchak, and McGlynn & McGlynn, of East St. Louis (Robert E. McGlynn, of counsel), for appellant, Community Coach Company.

Moran, Beatty and Hiscott, of Granite City, for appellee.

HOFFMAN, JUSTICE.

The plaintiff herein brought an action against the defendants John Fedorchak and Community Coach Company to recover damages for personal injuries sustained by her when she was struck by defendant

Fedorchak's automobile after leaving one of the coach company's buses. The jury found both defendants negligent and assessed plaintiff's damages. Both defendants appeal, and both seek a reversal on the law, the defendant Fedorchak claiming that plaintiff did not keep a proper lookout for her own safety, and the defendant coach company arguing that its action could not be the proximate cause of plaintiff's injuries.

The plaintiff was a middle-aged woman who lived at the northwest corner of the intersection of Twenty-second and Benton Streets in Granite City. Benton Street is a one-way street carrying northbound traffic only, along which the defendant coach company runs its buses. There was a regular bus stop at the southeast corner of the intersection.

On the day in question, plaintiff stood inside of her front door waiting for one of the buses to appear. It was cold out, and she did not wish to stand outside on the corner. When she saw the bus enter the intersection from the south, she went out on the porch and flagged the bus driver. The driver drove across the intersection and stopped at the northeast corner of the intersection, along the curb on the east side of Benton Street, in order to permit plaintiff to board the bus.

Plaintiff walked down her steps, crossed a walkway between the sidewalk in front of her house and the curb on Benton Street, and then went from west to east across Benton Street, going around in front of the bus. She got on the bus at the front door, but discovered she had forgotten her money. She then got off the bus, went around in front of it and started to cross back to the west side of Benton Street towards her home. She said she had taken "several steps" beyond the bus, when defendant John Fedorchak, coming from the south on Benton Street, struck her.

162

██ The sole and only question raised by defendant Fedorchak is whether or not plaintiff is contributorily negligent as a matter of law for failing to keep a proper lookout for her own safety.

Crucial to the solution of this question, insofar as the facts are concerned, is the testimony of the various witnesses pertaining to exactly what plaintiff did as she left the bus to return across Benton Street towards her home. This testimony is as follows:

The plaintiff: "As I got back around the front of the bus I looked to my right and then looked to my left. I peeked out from in front of the bus. I did not see any traffic. I proceeded to go across the street, and I had taken several steps when I was hit. I was not rushing after I got off the bus . . . I was not running either. When I moved into the street I continued to look to my left. I did not see a car approaching from the left."

Melvin Arbogast, plaintiff's son: "When the accident happened I was on the second floor bedroom looking out of the window. . . . When she came around the front of the bus she first looked to the right, then to the left. At that time I did not see Fedorchak's car . . . As she started across the street I noticed a car that was in motion about 3 or 4 feet on the side of the bus. Its speed was approximately 25 miles an hour. . . . My mother proceeded about two steps into the street from the westerly side of the bus before she got hit."

John Fedorchak, defendant: "As I got to the intersection the bus began to move across it. The bus started across Twenty-second Street and pulled back to the curb across the intersection. I was behind it. When he pulled to the curb I started

163

slowly around him. I watched the bus to see why he was stopping there as I knew there was no bus stop past Twenty-second Street. Then I pulled up slowly because I didn't know why the bus had stopped. As I proceeded forward the accident occurred. As I moved up along the side of the bus I was going four to five m.p.h. I didn't see the lady until I hit her. When I stopped my car after I hit her the front of my car was about even with the front of the bus. As I was passing alongside the bus my car was in the center of the street. I was traveling straight ahead."

Charles Jarman, the bus driver: "She told me she forgot her money and I told her that was all right, and before I could stop her she whirled around and ran back across the street. She went around the front of the bus and veered back to her left. . . . I could see her as she was going across in front of the bus. I just got a glimpse of the automobile, it happened so fast. As Mrs. Arbogast was moving in front of the bus she was not walking, she was running . . . She did not stop and look when she got to the left front of the bus. . . . The impact was behind, back of the front of the bus."

Charles Collins, a taxicab driver: "I was driving approximately one car length behind Fedorchak's car. . . . As I moved through the intersection the car in front of me was going not over thirteen, fourteen or fifteen miles an hour. . . . When the bus pulled to the curb and stopped it was parallel with the curb. When I first saw the lady she was running out in front of the left front end of the bus. At this time I was about two feet from the rear of the bus and the car in front of me had traveled a little over half of the length

of the bus. When I first saw the lady my car was directly in the center of the street. The car in front of me was also directly in the center of the street. When I first saw the lady the front end of the car in front of me was about twelve feet from the lady. At this time the car in front of me was not traveling over ten miles per hour. She was running straight across the street. When I first saw her she was looking to the west. When she got about to the middle of the street she didn't stop running, but she just kind of jerked her head around and looked back toward the south. Then she started to run at an angle. . . . she was probably two or three feet north of the bus when she was hit."

To support his contention that plaintiff was contributorily negligent as a matter of law defendant Fedorchak cites numerous railroad cases to the effect that a person may not proceed into an obvious place of danger without looking, nor may such person look and not see what must be obvious. Some of these cases cited are the following: Greenwald v. Baltimore & O. R. Co., 332 Ill 627, 632, 164 NE 142 (1928); De Bow v. Cleveland, C., C. & St. L. R. Co., 245 Ill App 158, 164 (1924) (4th Dist); Myhre v. Chicago City Ry. Co., 216 Ill App 128, 131 (1919) (1st Dist); Chicago, P. & St. L. R. Co. v. DeFreitas, 109 Ill App 104, 106 (1902) (3rd Dist); Chicago & E. I. Ry. Co. v. Kirby, 86 Ill App 57, 59 (1899) (1st Dist); Overman v. Illinois Cent. R. Co., 34 Ill App2d 30, 180 NE2d 213 (1962) (3rd Dist).

The defendant Fedorchak strenuously urges upon us that the evidence compels only one conclusion: that plaintiff "did not look in the direction from which the car was moving." Defendant further argues that plaintiff's statement that she looked but did not see defendant's car is impossible, improbable and incredible.

165

From these conclusions of fact, defendant Fedorchak stresses that the cases he has cited require a finding here of contributory negligence as a matter of law.

The plaintiff, answering these arguments, points out that because judgment notwithstanding is sought here, the court must consider the evidence with all reasonable inferences arising therefrom in favor of the plaintiff. Gray v. Terminal R. Ass'n of St. Louis, 37 Ill App2d 376, 185 NE2d 700. The plaintiff further points out that the weight of the evidence or the credibility of the witnesses is not before this court, that a verdict may not be set aside merely because the jury could have drawn different inferences from the evidence, and that only where there is a complete absence of probative facts to support the jury's conclusion is it reversible error to overrule a motion for judgment notwithstanding. King v. Mid-State Freight Lines, 6 Ill App2d 159, 126 NE2d 868.

The plaintiff further goes on to call our attention to numerous cases which hold that a failure by a pedestrian on a street or highway to look for approaching vehicles is not contributory negligence as a matter of law, but that that is a proper consideration for the jury to determine in view of all the surrounding circumstances. Morrison v. Flowers, 308 Ill 189, 139 NE 10; Moran v. Gatz, 390 Ill 478, 62 NE2d 443.

In the case of Crowley v. Sidey, 11 Ill App2d 577, 138 NE2d 90 (abstract opinion), the court held that crossing a public street in the middle of a block was not negligence per se; and in King v. Ryman, 5 Ill App2d 484, 125 NE2d 840, where a pedestrian sued for injuries received while crossing a highway in a diagonal fashion, the court refused to hold him guilty of contributory negligence as a matter of law and held that failure to keep a lookout was a matter for the jury's consideration.

In the light of these cases, we do not consider the railroad cases cited by defendant to be binding precedent in pedestrian cases. Moreover, it is not apparent to us that the same proximity of danger exists between a motorist crossing a railroad and a pedestrian crossing a city street.

In our judgment, the evidence which we have above set forth, taken with all its intendments most favorable to plaintiff and with all reasonable inferences to be drawn therefrom, does not clearly establish plaintiff's contributory negligence and would not compel reasonable minds to reach the conclusion that there was such contributory negligence.

We conclude therefore that the court properly denied defendant Fedorchak's motion for judgment notwithstanding and said judgment is affirmed.

██ On the issue of the bus company's negligence the plaintiff points out that the evidence clearly establishes that the bus, as it was stopped across the street from plaintiff's home, was blocking a crosswalk at the rear of the bus in violation of city and state law. This is the only negligence charged to the defendant coach company. There is nothing in the record, however, which would indicate that the plaintiff's failure to use the crosswalk was due in any way to the fact that it was blocked. It is abundantly clear from the evidence that the plaintiff made no effort whatsoever to use said crosswalk. When she entered the bus originally, she had come straight across from her house without using the crosswalk and entered at the front of the bus. She had a complete view of the street before she crossed from west to east. The hazardous condition confronting her arose only after she found it necessary to leave the bus and go back to her home for the money she had forgotten. The bus, in the meantime, did nothing.

██ The coach company argues that its action in blocking the crosswalk was not the proximate cause

of plaintiff's injuries. It has long been the law of this state that a person cannot be held responsible for the injuries of another unless it is reasonably foreseeable that his act or omission to act involved danger to the other. Wintersteen v. National Cooperage & Woodenware Co., 361 Ill 95, 197 NE 578; Kuhn v. Goedde, 26 Ill App2d 123, 167 NE2d 805. And so, to constitute proximate cause the injury must be the natural and probable consequence of the negligence, and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as the result of the negligence. In Hartnett v. Boston Store of Chicago, 185 Ill App 332, 335, the rule which is applicable here was succinctly stated as follows:

> "If the negligence does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the existence of the condition is not the proximate cause of the injury. When the act of a third person intervenes which is not a consequence of the first wrongful act or omission, and which could not have been foreseen by the exercise of reasonable diligence, and without which the injurious consequences could not have happened, the first act is not the proximate cause of the injury. If the act of a third person, which is the immediate cause of the injury, is such as in the exercise of reasonable diligence could not have been anticipated, and the third person is not under the control of the one guilty of the first act, the connection is broken, and the first act is not the proximate cause of the injury."

In the instant case, the immediate and proximate cause of plaintiff's injury was her moving into the street and being struck by defendant Fedorchak's auto. This only resulted by her abrupt removal of

herself from the bus. In such a situation, "The question always is, was there an unbroken connection between the wrongful act and the injury—a continuous operation?" Berg v. New York Cent. R. Co., 391 Ill 52, 64, 62 NE2d 676, 682. We do not believe that reasonable minds should say that the bus driver could reasonably foresee plaintiff's injury, as it occurred, following from his blocking of the rear crosswalk. In our judgment the bus, standing where it was, merely created a condition which was at most a remote cause of plaintiff's injury.

Taking this view, we hold that the trial court erred in not entering judgment notwithstanding for defendant coach company and the judgment against said defendant is accordingly reversed.

Affirmed in part and reversed in part.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.