(No. 73133.—

KATHLEEN THOMPSON, Indiv. and as Adm'r of the Estate of Richard Thompson, Deceased, *et al.*, Appellants, v. THE COUNTY OF COOK *et al.*, Appellees.

*Opinion filed January 28, 1993.—Rehearing
denied March 29, 1993.*

McMORROW and NICKELS, JJ., took no part.

Roy D. Simon, Jr., of Hempstead, New York (Tom Leahy, of Chicago, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy and Frank J. Oles, Assistant State's Attorneys, of counsel), for appellees.

Bruce Robert Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal and Bobbie McGee Gregg, of counsel), for *amicus curiae* City of Chicago.

JUSTICE BILANDIC delivered the opinion of the court:

The plaintiffs, Kathleen Thompson and Jamie Lynn Thompson, brought an action in the circuit court of Cook County against the County of Cook and the Cook County superintendent of highways (collectively, the county). The plaintiffs alleged that the county was negligent because it failed to adequately warn motorists of a curve located in a county road. Richard Thompson (Thompson), Kath-

leen's husband and Jamie Lynn's father, died following his involvement in a one-car automobile accident on the road. The jury returned a verdict in the plaintiffs' favor, but reduced the amount of its award by 23% to account for Thompson's comparative negligence. The trial court ultimately entered judgment for the plaintiffs in the amount of $2,361,740. The appellate court reversed. (222 Ill. App. 3d 459.) This court allowed the plaintiffs' petition for leave to appeal (134 Ill. 2d R. 315).

The evidence presented at trial established the following pertinent facts. The decedent, Thompson, and his friend, Brian Gittings, attended the Arlington Park Boat Show on the afternoon of March 6, 1982. Gittings and Thompson arrived at the Boat Show at approximately 1 p.m., where they walked around and drank beer. At 4:30 p.m., Gittings and Thompson left the Boat Show and went to a bar called "The Assembly," where they drank more alcohol. At 7 p.m., Gittings and Thompson went to Humana Hospital to visit Thompson's brother, Mark, Mark's wife and their new-born baby. While at the hospital, Gittings stated that he and Thompson had been to the Boat Show and then went to the Assembly, where they had more beer and drank shots of liquor. Mark Thompson testified that, based upon his experience as a bartender, Gittings' slurred speech and his admitted drinking, Mark concluded that Gittings was intoxicated. Mark also testified that Thompson appeared intoxicated.

After leaving the hospital, Gittings and Thompson then returned to the Assembly, where they each had another beer. Neither Gittings nor Thompson had anything to eat between the time they arrived at the Boat Show and the time they left the Assembly. Gittings and Thompson left the Assembly sometime after 8 p.m., and began to drive toward Thompson's home. Gittings drove and Thompson sat in the front passenger seat. Gittings

drove from Barrington Road to Route 62 (Algonquin Road), and then proceeded west on Route 62.

Officer Gary Dembek (Dembek) of the Barrington Hills police department was traveling eastbound on Route 62 at approximately 8:50 p.m. on the evening of March 6, when his radar picked up Gittings' westbound vehicle. Dembek's radar indicated that Gittings was driving 69 miles per hour in a 55-mile-per-hour zone. Dembek activated his siren and the mars lights on the roof of his car and pursued Gittings' vehicle. After Dembek pursued the vehicle for a short while on Route 62, Gittings turned northbound onto Sutton Road, where Dembek continued his pursuit. Dembek testified that, although the posted speed limit on Sutton Road was 35 miles per hour, he estimated that Gittings' Oldsmobile was traveling between 80 to 85 miles per hour along Sutton Road. Dembek estimated that his speed along Sutton Road was 60 to 65 miles per hour on hills and curves and 85 to 90 miles per hour on straight portions of the road.

Dembek lost sight of Gittings' vehicle as it continued north on Sutton Road. As Dembek entered a curve, he observed several small tree branches lying on the roadway. He continued past the curve and the branches, but then turned back to that area when he did not see Gittings' car at Lake-Cook Road. He left his squad car and discovered the vehicle he had been pursuing at the bottom of a ravine. The car was heavily damaged and covered with tree branches. Dembek observed that the only occupant of the vehicle was Thompson, who was lying on his back partially inside and partially outside of the passenger side of the vehicle. Thompson was severely injured.

Dembek called for an ambulance and Thompson was transferred to the hospital. Dembek also proceeded to the hospital, where he requested that a blood-alcohol test be performed on Thompson. The test revealed that

Thompson had a blood-alcohol concentration of 0.207, well over the limit at which a person is presumed to be under the influence of alcohol. (See Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(b)(3) (stating that an individual is presumed to be under the influence when his or her blood-alcohol concentration is 0.10 or greater).) Dembek then left the hospital and returned to the crash site. There, he found a set of footprints which began at the crash site and led east over a fence and across a small creek.

Gittings was arrested by other police officers at his home several hours later. At trial, Gittings claimed that he did not remember seeing a police squad car as he drove on Route 62. Gittings acknowledged that Route 62 was the quickest way to get to Thompson's home, but stated that he turned from Route 62 onto Sutton Road because Sutton Road was a "scenic route." Gittings admitted that he was intoxicated as he drove along Sutton Road, but testified that he felt able to drive and did not think his physical abilities had been impaired "that much." Gittings claimed that he had only four beers at the Assembly, but admitted that he stated in a pretrial deposition that he had consumed a total of eight beers at that tavern. Gittings also testified that Thompson never objected to the fact that Gittings was driving and did not ask Gittings to stop the vehicle so that he could get out.

Gittings also claimed that he was traveling along Sutton Road at a speed of only 45 miles per hour. He saw a speed limit sign for the road but did not see any signs indicating curves in the road. Gittings testified that, after he turned onto Sutton Road, the "next thing" he knew was that his car was off the road. He testified that, after his vehicle left the road, he got up off the ground and wandered around. He did not know where Thompson was and did not remember what his car looked like after the accident. He left the crash site and

hitch-hiked home, arriving sometime after midnight. He then called the police and was later arrested.

Thompson died 133 days after the accident. Following Thompson's death, Gittings was charged with reckless homicide. (See Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a) (stating that a person commits reckless homicide if, while driving a motor vehicle, he or she unintentionally kills an individual and the acts which caused the death are performed recklessly so as to create a likelihood of death or great bodily harm).) Gittings was subsequently tried and found guilty of that crime. Gittings was sentenced to one year's imprisonment in the Joliet Correctional Center. See *People v. Gittings* (1985), 136 Ill. App. 3d 655, 663.

The plaintiffs subsequently instituted the present negligence action against the county. The plaintiffs contended that the county was negligent in failing to warn motorists adequately of the curve on Sutton Road where the accident occurred. In support of this contention, the plaintiffs presented the testimony of an expert witness, who testified that the curve where the accident occurred was not adequately marked on the northbound side of the road. Gittings was driving on that side of the curve at the time of the accident.

Robert K. Seyfried (Seyfried), a traffic and highway engineer at the Northwestern Traffic Institute in Evanston, Illinois, testified as the county's expert witness. Seyfried testified that the signs and pavement markings on Sutton Road provided adequate warning of the curve where Gittings' vehicle left the road to persons driving at the posted speed of 35 to 40 miles per hour.

As stated, the jury returned a verdict in the plaintiffs' favor. The jury reduced the gross amount of its award by 23%, however, to account for Thompson's comparative negligence in voluntarily entering a vehicle that

was operated by an intoxicated individual. The final sum awarded to the plaintiffs was $2,361,740.

Following the reading of the verdict, the county moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the county's motion. The county appealed. The appellate court reversed, finding that the trial court erred in denying the county's motion for judgment notwithstanding the verdict. 222 Ill. App. 3d 459.

The issue now before this court is whether the trial court erred in denying the county's motion for judgment notwithstanding the verdict. The appellate court determined that the trial court erred in failing to grant the motion for judgment notwithstanding the verdict, because the county owed no legal duty to Thompson. The appellate court, relying upon this court's decision in *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 165, held that the county owed Thompson no duty of care because Thompson was not an intended and permitted user of Sutton Road. The appellate court stated that the existence of a duty must be determined as a matter of law. The court further held that "[t]he record is also clear, as Gittings testified, that [the decedent] did not object to his driving him home, and that [he] never asked Gittings 'to pull over because he wanted to get out of the car.' The argument, therefore, cannot be sustained that [decedent] falls 'within the class of motorists by whom defendant's highways were intended to be used.' " (222 Ill. App. 3d at 466, quoting *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 165.) Since the appellate court decided the case on the basis that the county owed no duty to the defendant, it did not have to consider any of the county's other assignments of errors.

In this court, the plaintiffs contend that the appellate court erred because it improperly applied *Curtis* to conclude that the county owed no duty to Thompson, or, in

the alternative, if *Curtis* were correctly applied, it should be repudiated by this court.

To recover damages based on negligence, the plaintiff must allege and prove that the defendant owed a duty to the plaintiff, a breach of that duty, and that the breach was the proximate cause of plaintiff's injuries. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421.) While the existence of a duty must be determined as a matter of law, whether a duty has been breached and whether the breach proximately caused an injury are factual matters. *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 12.

A judgment notwithstanding the verdict cannot be granted on the basis of factual matters unless "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510; *Maple v. Gustafson* (1992), 151 Ill. 2d 445, 453.) Assuming, for the sake of discussion, that the defendant owed a duty to Thompson and breached that duty, applying the *Pedrick* standard, we conclude that the plaintiffs did not meet their burden of proof of causation.

Gittings, the driver of the car in which plaintiffs' decedent was a passenger, admitted that he was driving his vehicle while under the influence of alcohol. He was driving at an excessive rate of speed. The posted limit which he admitted seeing on Sutton Road was 35 miles per hour. The evidence showed that he was driving between 80 and 85 miles per hour on that road, and that he was attempting to elude a traffic patrol car that was in pursuit. His conduct resulted in his being charged with reckless homicide, a Class 4 felony (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(b)(2)). He was tried, convicted and sentenced to a one-year prison term. The conviction and

sentence were affirmed on appeal. In doing so, the reviewing court stated:

"We believe that defendant's conduct as he traveled this hilly, curvy road at high speeds while in an intoxicated state demonstrates an utter disregard for the safety of the victim. His conduct certainly evidences a gross deviation from the care a reasonable person would exercise in such circumstances." *People v. Gittings* (1985), 136 Ill. App. 3d 655, 661.

The plaintiffs nonetheless contend that the signs at the curve where the accident occurred were inadequate and that the county's negligence caused the accident which resulted in Thompson's death. Illinois courts have long distinguished, however, between condition and causation. This court recognized that distinction in *Briske v. Village of Burnham* (1942), 379 Ill. 193, 199, defining proximate cause as follows: "The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for causal agencies to act." If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury. *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 306.

Proximate cause is also absent where the independent acts of a third person break the causal connection between the alleged original wrong and the injury. When that occurs, the independent act itself becomes a proximate or immediate cause. *Jeanguenat v. Zibert* (1979), 78 Ill. App. 3d 948, 950-51; *Moudy v. New York, Chicago & St. Louis R.R. Co.* (1944), 385 Ill. 446, 452-54; *Briske v. Village of Burnham* (1942), 379 Ill. 193, 199-201.

Gittings' actions in driving while drunk, speeding, eluding the police, and disregarding traffic signs were the sole proximate cause of this accident. Sutton Road provided nothing more than a location where Gittings' negligence came to fruition.

Having reached this conclusion, applying the *Pedrick* standard, it is not necessary to consider any of the issues dealing with the application of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, par. 3—102). We also need not consider whether *Curtis* was correctly decided or whether it applies to circumstances such as those present here.

Accordingly, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICES McMORROW and NICKELS took no part in the consideration or decision of this case.