BRIAN QUIRKE, Plaintiff-Appellant, v. THE CITY OF HARVEY *et al.*, Defendants (Michael Cain, Counterplaintiff-Appellant; The City of Harvey *et al.*, Counterdefendants-Appellees).

First District (4th Division)   Nos. 1—93—0856, 1—93—0981 cons.

Opinion filed September 8, 1994.

Patrick A. Salvi, of Law Offices of Patrick A. Salvi, of Chicago, for appellant Brian Quirke.

Kiesler & Berman, of Chicago (Rory Cassidy, of counsel), for appellant Michael Cain.

James D. Montgomery and Jean M. Templeton, both of James D. Montgomery & Associates, Ltd., of Chicago, for appellee City of Harvey.

Gerald J. Porento and Robert Guritz, both of Chicago, for appellee Commonwealth Edison Company.

JUSTICE THEIS delivered the opinion of the court:

We are called upon to determine whether the actions of city officials and an electric company in turning off the power line that supplied local traffic signals and street lighting created a condition or a proximate cause of an intersectional automobile collision. We conclude that these actions created a condition, and we affirm the grant of summary judgment in favor of the city and the electric company.

This bizarre sequence of events began at approximately 9:30 p.m. on August 21, 1990, when defendant James Lewis, who had recently been fired by Commonwealth Edison, climbed up a 34,000-volt power pole in the City of Harvey and threatened to electrocute himself. By 12:30 or 1 a.m., the crowd had grown to about 75 persons, including the chiefs of both the police and fire departments. Lewis eventually agreed to come down from the pole in a Commonwealth Edison lift truck that had been brought to the site.

During the time Lewis was atop the power pole, the Harvey police chief directed Commonwealth Edison to turn off the city's major power line. This power line supplied electricity to many traffic signals and streetlight systems in Harvey. As a result of the power shutdown, one area left without power to its traffic signals and overhead streetlights was the intersection at 147th Street and Halsted, three or four blocks from the site where Lewis had climbed the electrical pole.

At approximately 1 a.m., Michael Cain, then 18, was driving a Jeep CJ-7 with passenger Brian Quirke after the two had attended a

concert in Tinley Park. After stopping for pizza, they got lost while trying to return to Interstate 294. Not realizing that they were heading east on 147th Street in Harvey, Cain drove along looking for signs that would lead them back to the expressway. Cain recalled at his deposition that the street was poorly lit and that they drove through areas where the streetlights had been "knocked out." Nevertheless, he testified that he could see the roadway in front of him "just fine."

After driving for some three or four miles from the pizza restaurant, Cain noticed that there was no street lighting ahead of the car. As he approached within 100 yards of the intersection at 147th and Halsted, he saw that the traffic control light hanging over the intersection was out. He testified that as he came within 50 yards of the intersection, he slowed down from 25 or 30 miles per hour to 10 or 15 because of the inoperative traffic light.

Cain also testified that the lack of lighting obscured his view ahead on 147th and that the surrounding buildings obstructed his view down Halsted. He did not stop at the intersection because he saw another car proceed through it and because he "wasn't quite up on the rules of the road." At the time he proceeded into the intersection, Cain testified he was traveling 10 miles per hour. In his written answer to an interrogatory about the rate of speed he was driving at the time of the accident, however, Cain responded that he was driving 30 miles per hour.

Cain's jeep collided with a car driven by Denise Miller, who had entered the intersection heading northbound on Halsted. Cain stated that he did not see Miller's vehicle until a "[s]plit second" before his vehicle collided into hers. Cain was looking "[p]robably straight ahead right before she hit me." According to Cain, Miller was driving 40 or 45 miles per hour. The impact from the collision caused passenger Brian Quirke to be thrown out the door, which had flown open. The jeep spun around three or four times. Cain was not injured.

Plaintiff Quirke testified that approximately five minutes before the accident, he noticed that their vehicle had moved from an area illuminated by street lighting to an area obscured in relative darkness. Quirke stated that their jeep was traveling 40 to 45 miles per hour at the time. He added that despite the darkened conditions, Cain never slowed down before entering the intersection at 147th and Halsted.

On March 5, 1991, Quirke brought a negligence action against the City of Harvey, Cain, Miller, Commonwealth Edison, and James Lewis for personal injuries sustained in the accident. Miller's insurer filed a subrogation claim against Cain, and that case was consolidated

with this one on October 29, 1991. The City of Harvey subsequently counterclaimed for contribution against Cain and Commonwealth Edison, and Cain counterclaimed against the City of Harvey and Commonwealth Edison.

On September 15, 1992, Commonwealth Edison moved for summary judgment with respect to Quirke's action and all counterclaims, and the City of Harvey joined the motion. On January 29, 1993, the trial court granted summary judgment in favor of both Commonwealth Edison and the City of Harvey against Quirke and against Cain on Cain's counterclaims. In announcing her ruling, the trial judge stated that the darkened street and inoperative traffic lights at the intersection constituted a condition and not a proximate cause of the accident.

Quirke subsequently moved for reconsideration and, for the first time, tendered to the trial court an unsworn statement of Denise Miller, dated September 13, 1990, who responded to oral interrogatories posed by an investigator hired by Quirke. In that statement, Miller asserted that on the night of the accident, she did not realize that there was an intersection until she had driven right into it. She also blamed the City of Harvey for failing to position someone at the intersection after the power outage to direct traffic. The defendants objected to admission of this testimony on the grounds that it was unsworn, untimely, and added little information to that which was already contained in the record. Cain adopted and joined in Quirke's motion for reconsideration.

The trial judge refused to alter her ruling. She explained that the Miller statement was not newly acquired evidence unavailable to Quirke at the time of the summary judgment ruling. She noted, additionally, that even if she did consider the contents of the statement, nothing in the statement would cause her to change her ruling. In denying the motion for reconsideration, the court again stated that the inoperative traffic controls constituted merely a condition:

> "It is my opinion and my interpretation of the law that the creation of the darkness at this particular intersection where the plaintiff sustained his injuries was a creation of a condition ***, [and the] conduct [of the drivers of the motor vehicles] is something entirely different."

Quirke and Cain then filed this appeal.

## DISCUSSION

Summary judgment is appropriate where the pleadings, depositions, and affidavits show that there is no genuine issue of material

fact, and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Billman v. Frenzel Construction Co.* (1994), 262 Ill. App. 3d 681, 684.) The appellate court reviews *de novo* a grant of summary judgment. *Ferrer v. Sugar Magnolia, Inc.* (1994), 263 Ill. App. 3d 186, 189.

Quirke and Cain argue on appeal that the trial court erred in entering summary judgment in favor of Commonwealth Edison and the City of Harvey because the appellees' negligence furnished a proximate cause rather than a condition of the accident. Quirke and Cain also argue that Commonwealth Edison and the City of Harvey should have foreseen that an intersection collision would occur once the appellees shut off the power line supplying electricity to traffic and streetlights.

█ █ Illinois case law distinguishes between the proximate cause of an injury and a condition which provides an opportunity for the causal agency to act. The supreme court has articulated this "cause vs. condition" analysis in the following terms: "If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury." (*Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294, citing *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 306, 45 N.E.2d 665, 675.) Proximate cause exists when the injury is the natural and probable result of the defendant's negligent act, and the injury is of the sort that an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence. (*Sokolowski v. All Points Distribution Service, Inc.* (1993), 243 Ill. App. 3d 539, 543, 612 N.E.2d 79, 82.) A defendant's negligence is not a proximate cause of a plaintiff's injury if some intervening act supersedes defendant's negligence; however, if a defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability. (*Quintana v. City of Chicago* (1992), 230 Ill. App. 3d 1032, 1034, 596 N.E.2d 128, 129.) Proximate cause is generally a question of fact; however, where the facts alleged suggest that a party would never be able to recover, proximate cause can become a question of law. (*Cannon v. Commonwealth Edison Co.* (1993), 250 Ill. App. 3d 379, 381-82, 621 N.E.2d 52, 54.) Contrary to appellants' assertions, the distinction between causation and condition remains viable in Illinois. *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294; *Billman v. Frenzel Construction Co.* (1994), 262 Ill. App. 3d 681, 687.

The "cause vs. condition" doctrine was recently applied by this court in *Quintana v. City of Chicago* (1992), 230 Ill. App. 3d 1032, 596 N.E.2d 128. In that case, the pedestrian plaintiff brought a negligence

action against the City of Chicago and four individual drivers after she was struck by an automobile that had collided with two other vehicles as she was crossing a Chicago street. At the time of the accident, the traffic lights at the intersection were inoperative. The appellate court affirmed the grant of summary judgment in favor of the city, concluding that the inoperative signal lights were not the proximate cause of the pedestrian's injuries. Any causal connection between the original wrong and the injury was broken by the conduct of the drivers in failing to comply with the statutory requirement that inoperative lights be treated as stop signs. *Quintana*, 230 Ill. App. 3d at 1035, 596 N.E.2d at 130.

■ Appellants attempt to distinguish *Quintana* on the basis that the traffic signals in that case malfunctioned during daylight hours. Appellants argue that no such unforeseeable malfunctioning occurred here. Rather, they contend the city and the electric company made an affirmative decision to shut off the power line supplying electricity to traffic signals and streetlights at night.

We are not persuaded by this distinction. The relevant inquiry here is not whether traffic lights are rendered inoperative through malfunctioning or affirmative actions, but rather whether the drivers' conduct was foreseeable.

Appellants argue that the intervening acts of Cain and Miller were a reasonably foreseeable result of the appellees' decision to turn off all the streetlights and traffic signals at a busy intersection in the middle of the night. In support, appellants cite *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242, an automobile collision case involving an intervening negligent act. In *Bentley*, the driver of a car in which the plaintiff's decedent was a passenger failed to see the sign and collided with another vehicle in the intersection of the highway. The Illinois Supreme Court held that the township was negligent as a matter of law for allowing the branches of a tree to obscure the visibility of a stop sign at the entrance to a State highway. The township should have foreseen that a driver who lacked the benefit of a stop sign would fail to recognize the approaching hazardous intersection. Because more than one proximate cause of an injury can exist, the negligence of the driver was not a superseding cause that relieved the township of liability. *Bentley*, 83 Ill. 2d at 17, 413 N.E.2d at 1245-46.

Appellants' reliance on *Bentley* is misplaced. In that case, the township's failure to remove the overhanging foliage prevented drivers from recognizing the approaching hazards. Here, by contrast, appellees' alleged negligence did not prevent the appellants from discerning that the traffic lights at the intersection of 147th and Hal-

sted had been turned off. It is undisputed that Michael Cain saw the intersection when he was about 100 yards away and that he noticed that the traffic control lights at the intersection were not operating. Furthermore, under the Illinois Vehicle Code, a driver approaching a traffic control signal on which no signal light is illuminated must stop before entering the intersection. (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 11—305(e).) Appellees here could not have reasonably foreseen that one or both of the drivers would violate their statutory duty to treat an inoperable traffic light as a stop sign and then proceed into the intersection. (See *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 50, 566 N.E.2d 1365, 1369 (defendant landowner could not have reasonably foreseen that a truck driver who collided with bicyclist would exit defendant's driveway without first ascertaining whether any traffic was approaching); *Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 1079, 537 N.E.2d 1146, 1147 (not foreseeable that truck driver would swerve into wrong lane of oncoming traffic to avoid striking pothole).) Cain's explanation that he did not stop because he "wasn't quite up on the rules of the road" does not excuse his negligence.

■ We also reject appellants' suggestion that the City of Harvey's counterclaim for contribution against Commonwealth Edison establishes that the city foresaw the prospect of an accident if the intersection were left unlit or unpatrolled. The counterclaim is neither at issue in this appeal nor relevant to the question of whether summary judgment on the issue of causation was properly granted. Similarly, the statement of Denise Miller attributing blame to the City of Harvey is only an opinion and does not establish any disputed issue of fact as to the question of whether appellees' acts created a condition or proximate cause of the accident.

The City of Harvey and Commonwealth Edison cannot be held legally responsible for the remote risk that someone, when encountering a major intersection that has been rendered dark due to an emergency power shutdown, will disregard the rules of the road and proceed through the intersection without stopping.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

HOFFMAN, P.J., and JOHNSON, J., concur.