VACIUS SCERBA, as Father and Next Friend of George Scerba, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—95—0234

Opinion filed October 7, 1996.

Michael W. Rathsack, Philip F. Maher, and Stephen E. McLean, all of Chicago, for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Ruth F. Masters, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Arnstein & Lehr, of Chicago (Arthur L. Klein, Eugene J. Kelley, Jr., and David L. Strauss, of counsel), for appellee Chicago Transit Authority.

JUSTICE WOLFSON delivered the opinion of the court:

On July 2, 1984, at about 10 a.m., 12-year-old George Scerba (George) left his school to go home. Minutes later he was struck by a car near the middle of Sheridan Road, several feet south of its intersection with Rosemont Avenue in Chicago.

This case concerns the several choices available to George before he made the wrong decision to cross the street in front of a Chicago Transit Authority (CTA) bus.

George was injured when he was struck by the car. His father brought suit on George's behalf against the City of Chicago (City) and the CTA. The trial court granted both defendants' motions for summary judgment. We affirm the order entered in favor of the City, but we reverse the summary judgment granted in favor of the CTA and remand that cause for further proceedings.

FACTS

All parties agree the relevant facts must be taken from the deposition of George Scerba.

At the time of the accident he lived at 6033 North Sheridan Road, on the east side of the street. He was a summer school student at Hardy Prep School, located at the southwest corner of Sheridan and Rosemont, about 2¹/₂ blocks north of George's residence. To get home, George had to cross Sheridan Road at some point.

George had attended Hardy for at least eight years, walking between home and school many times a year by himself since he was 9 or 10. He knew that Sheridan was a busy street with fast-moving traffic. He knew it was dangerous to cross that street outside of a crosswalk. In addition to the crosswalk at Rosemont, there were four other crosswalks that would take him from the west side of Sheridan to the east side, where his home was, each one regulated by traffic control devices.

On the day of the accident, George left school and approached the intersection of Sheridan and Rosemont. When he reached the intersection, he saw the light for pedestrians to cross Sheridan was red. Instead of waiting for the light to turn green, he decided to walk south to a nearby bus stop to talk to some friends waiting for a bus headed south on Sheridan.

After several minutes the bus arrived. It was one of those "newer" accordion buses, the extended kind. His friends began to board. He decided to continue his journey home. He looked back to the crosswalk at Rosemont and noticed the bus had blocked the crosswalk across Sheridan and extended onto Rosemont. By then, the light had turned green for pedestrians to cross Sheridan. He saw that the accordion bus had pulled up short of the bus stop. He knew this bus would pick up its passengers and then pull away from the bus stop, clearing the blocked intersection, in 40 seconds or less.

Realizing that he would have to walk onto Rosemont to cross Sheridan at the intersection, and unwilling to wait until the bus cleared the intersection, George decided to cross Sheridan at a point about six feet in front of the bus, well south of the safety of the marked crosswalk. He had crossed Sheridan outside of a crosswalk at least five previous times.

George's view of traffic headed southbound on Sheridan was partially obstructed by the bus. Undeterred, he crossed in front of the bus and began walking east across Sheridan. That is when he was hit by a southbound and, it turned out, uninsured motorist.

The CTA moved for summary judgment on the ground that the temporary location of the bus was not a proximate cause of George's injuries. The City took the same position, but relied mainly on the ground that it owed George no duty because he was not an intended or permitted user of the street.

The trial judge granted the motions, concluding that the location of the bus created a condition that was not a proximate cause of the injury, the CTA "breached no duty it owed to this young man," and the City owed George no duty because he was crossing the street outside a crosswalk.

OPINION

We begin with the familiar principles of law governing summary judgment motions.

■ We must independently examine the evidence presented for and against the motion to determine whether the movant established the absence of a genuine issue of fact. *Jefferson v. City of Chicago*, 269 Ill. App. 3d 672, 674, 646 N.E.2d 1305 (1995). Our review of the summary judgment is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 615 N.E.2d 736 (1993). Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fatigato v. Village of Olympia Fields*, 281 Ill. App. 3d 347, 353, 666 N.E.2d 732 (1996). Summary judgment will be allowed only where the right of the moving party is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867 (1986).

1. The case against the City of Chicago

■ We need not pause very long at this part of the case. The duty of the City extends only to those it "intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3—102(a) (West 1994).

The intent requirement is determined by the nature of the property, not the intent of the person who uses it. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 425-26, 592 N.E.2d 1098 (1992). As the court said in *Wojdyla*: "Marked or unmarked crosswalks are intended for the protection of pedestrians crossing streets, and municipalities are charged with liability for those areas. Those areas do not, however, include a highway in mid-block." *Wojdyla*, 148 Ill. 2d at 426. Also see *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 651 N.E.2d 1115 (1995).

When George Scerba left the safety of the sidewalk and walked onto the middle of Sheridan Road, he was neither an intended nor permitted user of the roadway. The City owed him no duty of ordinary care. See *Mitchell v. City of Chicago*, 221 Ill. App. 3d 1017, 583 N.E.2d 60 (1991) (city had no duty to reconfigure its bus stops); *Crutchfield v. Yellow Cab Co.*, 189 Ill. App. 3d 1091, 545 N.E.2d 961 (1989) (passengers outside the scope of city's duty when they chose to use the more convenient street rather than the marked crosswalk).

The lawsuit against the City proceeded on the theory that the bus stops should have been reconfigured to accommodate longer buses. We see nothing in this record that would cause us to say the

City owed George a duty when he chose to cross the street at mid-block. For that reason, we affirm the trial judge's grant of summary judgment on behalf of the City of Chicago.

## 2. The case against the CTA

■ The issue is one of causation. The CTA does not seriously argue that it owed no duty to George Scerba. Nor does it contend there is no factual issue concerning the bus driver's negligence. There is a statutory obligation placed on every driver to refrain from blocking a marked crosswalk in a way that obstructs the passage of pedestrians. 625 ILCS 5/11—1425 (West 1994). Even without the statute, it can be said that blocking a marked crosswalk used by pedestrians raises a factual issue of negligence.

■ That, of course, does not end the inquiry. In addition to the existence of a duty owed by the defendant to the plaintiff, the cause of action must provide proof that an injury proximately resulted from the breach of that duty. *Arroyo v. Chicago Transit Authority*, 268 Ill. App. 3d 317, 325, 643 N.E.2d 1322 (1994). Ordinarily, questions concerning breach of duty and proximate cause are factual matters for the jury to decide. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 156, 554 N.E.2d 223 (1990). Still, there are times when the facts are so clearly one-sided that it can be said a party would never be able to recover. In those instances, proximate cause can be determined as a matter of law on a motion for summary judgment. *Quirke v. City of Harvey*, 266 Ill. App. 3d 664, 668, 639 N.E.2d 1355 (1994).

The CTA contends, and the trial judge agreed, that the CTA bus created only a condition when it blocked the crosswalk and that the immediate and proximate cause of the injury was George's independent decision to cross in front of the bus into the middle of Sheridan Road.

The Illinois decision relied on by the CTA is *Arbogast v. Fedorchak*, 44 Ill. App. 2d 160, 194 N.E.2d 382 (1963). In that case, as here, the plaintiff was hit by a car when she crossed in front of the defendant's bus in the middle of the street. The bus had blocked the crosswalk. The court set aside a jury verdict for the plaintiff, holding that the bus "merely created a condition which was at most a remote cause of plaintiff's injury." *Arbogast v. Fedorchak*, 44 Ill. App. 2d at 168-69.

We find a significant difference between *Arbogast* and this case. There, the court said: "There is nothing in the record, however, which would indicate that the plaintiff's failure to use the crosswalk was due in any way to the fact that it was blocked." *Arbogast v. Fedorchak*, 44 Ill. App. 2d at 167. Here, George said he first looked to the

crosswalk, saw that it was blocked, then determined that it would not be safe to walk around the rear of the bus onto Rosemont. *Arbogast* is not controlling.

■ It is true, as the CTA suggests, that Illinois retains the distinction between condition and causation. In *Thompson v. County of Cook*, 154 Ill. 2d 374, 383, 609 N.E.2d 290 (1993), the court said: "If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury." The court implicitly rejected the view that "the distinction between cause and condition is now almost entirely discredited." *Duncan v. Rzonca*, 133 Ill. App. 3d 184, 204, 478 N.E.2d 603 (1985).

But, given the viability of the condition vs. cause distinction, it is important that we examine "the nature of the risk and the character of the intervening cause." W. Prosser, Torts, § 42 at 248 (4th ed. 1971).

We look to the kind of hazard that was created, its gravity, its relation in time and space to the injury, and whether the CTA bus driver could reasonably foresee that an injury would be a likely result of his conduct. See *Jefferson v. City of Chicago*, 269 Ill. App. 3d at 676. It is not necessary that the driver foresee the exact way in which the injury in fact takes place. *Sokolowski v. All Points Distribution Service, Inc.*, 243 Ill. App. 3d 539, 543, 612 N.E.2d 79 (1993).

■ We first focus on the bus driver's conduct. He blocked the intersection during a time when children were being released from school. He did not have to, but he did. The bus created a hazard that was close in time and place to the injury. It was not a remote risk. A reasonable driver would foresee that a young pedestrian might try to get around the bus, either in front of it or in back. It would follow, then, that the bus driver should not be surprised that a fast-moving car traveling southbound on Sheridan Road would strike the youngster. There was nothing "highly extraordinary" or "tragically bizarre" or "unique" about this sequence of events. See *Michalak v. County of La Salle*, 121 Ill. App. 3d 574, 576, 459 N.E.2d 1131 (1984).

This was active conduct by the bus driver, not the passive or static condition of the inoperative traffic lights in *Quintana v. City of Chicago*, 230 Ill. App. 3d 1032, 596 N.E.2d 128 (1992); or the turned-off streetlights and traffic signals of *Quirke v. City of Harvey*, 266 Ill. App. 3d 664, 639 N.E.2d 1355 (1994); or the hilly, curvy road of *Thompson v. County of Cook*, 154 Ill. 2d 374, 609 N.E.2d 290 (1993).

In each of those cases, and in virtually all the "condition" cases, a new and independent force broke the causal connection between

the original wrong and the injury itself. See *Durbin v. St. Louis Slag Products Co.*, 206 Ill. App. 3d 340, 357, 564 N.E.2d 242 (1990). The original wrong somehow became remote, unimportant, a mere aside when considered against the new and unforeseeable negligent conduct that is the immediate cause of the injury.

Here, a reasonable jury could find an unbroken causal connection between the blocked intersection and the injury. If so, the jury could consider that there may be more than one proximate cause of the injury. *Bentley v. Saunemin Township*, 83 Ill. 2d 10, 17, 413 N.E.2d 1242 (1980).

True, George foolishly rejected several safe routes for the risky path he chose. But availability of another route, standing alone, is not enough to erase the foreseeability of George pursuing the path he traveled. See *Dory v. Kovatchis*, 196 Ill. App. 3d 899, 554 N.E.2d 487 (1990).

He could have waited the 40 seconds or so it would have taken for the bus to clear the intersection. But a reasonable bus driver might understand that in the life of a 12-year-old 40 seconds can seem like a long time. That, too, is a matter for the jury to consider. We see nothing in the cases that supports the CTA's contention that George would have to be forced or compelled to enter the intersection where he did before the necessary causal connection can be found. At any rate, matters of comparative negligence are not appropriately determined at this stage of the proceedings.

It could be that George's conduct was the sole proximate cause of his injury. Or maybe the car driver's conduct was the sole proximate cause of the injury. We believe these are matters for a jury to determine. We cannot draw a bright line between matters of fact and matters of law. Each case will turn on its own facts. This is a close case, but we are persuaded that the question of whether the bus driver's conduct was a proximate cause of George Scerba's injury is a matter of fact for the jury's determination.

CONCLUSION

For the reasons stated, we affirm the grant of summary judgment entered on behalf of the City of Chicago, but reverse the summary judgment granted the CTA and remand that cause to the trial court for further proceedings.

Affirmed in part; reversed and remanded in part.

BUCKLEY and BRADEN, JJ., concur.