First Division 
 October 7, 1996 
 








No. 1-95-0234

VACIUS SCERBA, as Father and Next ) APPEAL FROM THE
Friend of GEORGE SCERBA, ) CIRCUIT COURT OF
 ) COOK COUNTY.
 Plaintiff-Appellant, )
 )
 v. )
 )
CITY OF CHICAGO, a municipal )
corporation, and CHICAGO TRANSIT )
AUTHORITY, ) HONORABLE
 ) PATRICK E. McGANN,
 Defendant-Appellee. ) JUDGE PRESIDING.


 JUSTICE WOLFSON delivered the opinion of the court:
 On July 2, 1984, at about 10 a.m., 12-year-old George Scerba
(George) left his school to go home. Minutes later he was struck
by a car near the middle of Sheridan Road, several feet south of
its intersection with Rosemont Avenue in Chicago.
 This case concerns the several choices available to George 
before he made the wrong decision to cross the street in front 
of a CTA bus.
 George was injured when he was struck by the car. His
father brought suit on George's behalf against the City of
Chicago and the CTA. The trial court granted both defendants'
motions for summary judgment. We affirm the order entered in
favor of the City, but we reverse the summary judgment granted in
favor of the CTA and remand that cause for further proceedings.
FACTS
 All parties agree the relevant facts must be taken from the
deposition of George Scerba. 
 At the time of the accident he lived at 6033 North Sheridan
Road, on the east side of the street. He was a summer school
student at Hardy Prep School, located at the southwest corner of
Sheridan and Rosemont, about two-and-one-half blocks north of
George's residence. To get home, George had to cross Sheridan
Road at some point.
 George had attended Hardy for at least eight years, walking
between home and school many times a year by himself since he was
nine or 10. He knew that Sheridan was a busy street with
fast-moving traffic. He knew it was dangerous to cross that
street outside of a crosswalk. In addition to the crosswalk at
Rosemont, there were four other crosswalks that would take him
from the west side of Sheridan to the east side, where his home
was, each one regulated by traffic control devices.
 On the day of the accident, George left school and
approached the intersection of Sheridan and Rosemont. When he
reached the intersection he saw the light for pedestrians to
cross Sheridan was red. Instead of waiting for the light to turn
green, he decided to walk south to a nearby bus stop to talk to
some friends waiting for a bus headed south on Sheridan.
 After several minutes the bus arrived. It was one of those
"newer" accordion buses, the extended kind. His friends began to
board. He decided to continue his journey home. He looked back
to the crosswalk at Rosemont and noticed the bus had blocked the
crosswalk across Sheridan and extended onto Rosemont. By then,
the light had turned green for pedestrians to cross Sheridan. He
saw that the accordion bus had pulled up short of the bus stop. 
He knew this bus would pick up its passengers and then pull away
from the bus stop, clearing the blocked intersection, in 40
seconds or less.
 Realizing that he would have to walk onto Rosemont to cross
Sheridan at the intersection, and unwilling to wait until the bus
cleared the intersection, George decided to cross Sheridan at a
point about six feet in front of the bus, well south of the
safety of the marked crosswalk. He had crossed Sheridan outside
of a crosswalk at least five previous times.
 George's view of traffic headed southbound on Sheridan was
partially obstructed by the bus. Undeterred, he crossed in front
of the bus and began walking east across Sheridan. That is when
he was hit by a southbound and, it turned out, uninsured
motorist.
 The CTA moved for summary judgment on the ground that the
temporary location of the bus was not a proximate cause of
George's injuries. The City took the same position, but relied
mainly on the ground that it owed George no duty because he was
not an intended or permitted user of the street.
 The trial judge granted the motions, concluding that the
location of the bus created a condition that was not a proximate
cause of the injury, the CTA "breached no duty it owed to this
young man," and the City owed George no duty because he was
crossing the street outside a crosswalk.
OPINION
 We begin with the familiar principles of law governing
summary judgment motions. 
 We must independently examine the evidence presented for and
against the motion to determine whether the movant established
the absence of a genuine issue of fact. Jefferson v. City of
Chicago, 269 Ill. App. 3d 672, 674, 646 N.E.2d 1305 (1995). Our
review of the summary judgment is de novo. In re Estate of
Hoover, 155 Ill. 2d 402, 615 N.E.2d 736 (1993). Summary judgment
is proper where the pleadings, depositions, admissions, and
affidavits on file show there is no genuine issue as to any
material fact and that the moving party is entitled to a 
judgment as a matter of law. Fatigato v. Village of Olympic
Fields, 281 Ill. App. 3d 347, 353, 666 N.E.2d 732 (1996). 
Summary judgment will be allowed only where the right of the
moving party is clear and free from doubt. Purtill v. Hess, 111
Ill. 2d 229, 489 N.E.2d 867 (1986).
 l. The case against the City of Chicago.
 We need not pause very long at this part of the case. The 
duty of the City extends only to those it "intended and permitted 
to use the property in a manner in which and at such times as it
was reasonably foreseeable that it would be used..." 745 ILCS
10/3-102(a) (West 1994).
 The intent requirement is determined by the nature of the
property, not the intent of the person who uses it. Wojdyla v.
City of Park Ridge, 148 Ill. 2d 417, 425-26, 592 N.E.2d 1098
(1992). As the Court said in Wojdyla: "Marked or unmarked
crosswalks are intended for the protection of pedestrians
crossing streets, and municipalities are charged with liability
for those areas. Those areas do not, however, include a highway
mid-block." Wojdyla, 148 Ill. 2d at 426. Also see Vaughn v.
City of W. Frankfort, 166 Ill. 2d 155, 651 N.E.2d 1115 (1995).
 When George Scerba left the safety of the sidewalk and walked
onto the middle of Sheridan Road he was neither an intended or
permitted user of the roadway. The City owed him no duty of
ordinary care. See Mitchell v. City of Chicago, 221 Ill. App. 3d
1017, 583 N.E.2d 60 (1991) (city had no duty to reconfigure its
bus stops); Crutchfield v. Yellow Cab Co., 189 Ill. App. 3d 1091,
545 N.E.2d 961 (1989) (passengers outside the scope of city's
duty when they chose to use the more convenient street rather
than the marked crosswalk).
 The lawsuit against the City proceeded on the theory that
the bus stops should have been reconfigured to accommodate longer
buses. We see nothing in this record that would cause us to say
the City owed George a duty when he chose to cross the street at
mid-block. For that reason, we affirm the trial judge's grant of
summary judgment on behalf of the City of Chicago.
 2. The case against the CTA.
 The issue is one of causation. The CTA does not seriously
argue that it owed no duty to George Scerba. Nor does it contend
there is no factual issue concerning the bus driver's negligence.
There is a statutory obligation placed on every driver to refrain
from blocking a marked crosswalk in a way that obstructs the
passage of pedestrians. 625 ILCS 5/11-1425 (West 1994). Even
without the statute, it can be said that blocking a marked
crosswalk used by pedestrians raises a factual issue of
negligence.
 That, of course, does not end the inquiry. In addition to
the existence of a duty owed by the defendant to the plaintiff
the cause of action must provide proof that an injury proximately
resulted from the breach of that duty. Arroyo v. Chicago Transit
Authority, 268 Ill. App. 3d 317, 325, 643 N.E.2d 1322 (1994). 
Ordinarily, questions concerning breach of duty and proximate
cause are factual matters for the jury to decide. Ward v. K Mart
Corp., 136 Ill. 2d 132, 156, 554 N.E.2d 223 (1990). Still, there
are times when the facts are so clearly one-sided that it can be
said a party would never be able to recover. In those instances,
proximate cause can be determined as a matter of law on a motion
for summary judgment. Quirke v. City of Harvey, 266 Ill. App. 3d
664, 668, 639 N.E.2d 1355 (1994).
 The CTA contends, and the trial judge agreed, that the CTA
bus created only a condition when it blocked the crosswalk, and
that the immediate and proximate cause of the injury was George's
independent decision to cross in front of the bus onto the middle
of Sheridan Road.
 The Illinois decision relied on by the CTA is Arbogast v.
Fedorchak, 44 Ill. App. 2d 160, 194 N.E.2d 382 (1963). In that
case, as here, the plaintiff was hit by a car when she crossed in
front of the defendant's bus onto the middle of the street. The
bus had blocked the crosswalk. The court set aside a jury
verdict for the plaintiff, holding that the bus "merely created
a condition which was at most a remote cause of plaintiff's
injury." Arbogast v. Fedorchak, 44 Ill. App. 2d at 168-69.
 We find a significant difference between Arbogast and this 
case. There, the court said: "There is nothing in the record, 
however, which would indicate that the plaintiff's failure to use
the crosswalk was due in any way to the fact that it was
blocked." Arbogast v. Fedorchak, 44 Ill. App. 2d at 167. Here,
George said he first looked to the crosswalk, saw that it was
blocked, then determined that it would not be safe to walk around
the rear of the bus onto Rosemont. Arbogast is not controlling.
 It is true, as the CTA suggests, that Illinois retains the
distinction between condition and causation. In Thompson v.
County of Cook, 154 Ill. 2d 374, 383, 609 N.E.2d 290 (1993), the
court said: "If a defendant's negligence does nothing more than
furnish a condition by which injury is made possible, that
negligence is not the proximate cause of the injury." The court 
implicitly rejected the view that "the distinction between cause
and condition is now almost entirely discredited." Duncan v.
Rzonca, 133 Ill. App. 3d 184, 204, 478 N.E.2d 603 (1985).
 But, given the viability of the condition vs. cause
distinction, it is important that we examine "the nature of the
risk and the character of the intervening cause." Prosser,
Torts, sec. 42, at 248 (4th ed. 1971). 
 We look to the kind of hazard that was created, its gravity,
its relation in time and space to the injury, and whether the CTA
bus driver could reasonably foresee that an injury would be a
likely result of his conduct. See Jefferson v. City of Chicago,
269 Ill. App. 3d at 676. It is not necessary that the driver
foresee the exact way in which the injury in fact takes place. 
Sokolowski v. All Points Distribution Service, Inc., 243 Ill.
App. 3d 539, 543, 612 N.E.2d 79 (1993).
 We first focus on the bus driver's conduct. He blocked the
intersection during a time when children were being released from
school. He did not have to, but he did. The bus created a
hazard which was close in time and place to the injury. It was
not a remote risk. A reasonable driver would foresee that
a young pedestrian might try to get around the bus, either in
front of it or in back. It would follow, then, that the bus
driver should not be surprised that a fast-moving car traveling
southbound on Sheridan Road would strike the youngster. There 
was nothing "highly extraordinary" or "tragically bizarre" or
"unique" about this sequence of events. See Michalak v. County
of La Salle, 121 Ill. App. 3d 574, 576, 459 N.E.2d 1131 (1984).
 This was active conduct by the bus driver, not the passive
or static condition of the inoperative traffic lights in Quintana
v. City of Chicago, 230 Ill. App. 3d 1032, 596 N.E.2d 128 (1992);
or the turned off streetlights and traffic signals of Quirke v.
City of Harvey, 266 Ill. App. 3d 664, 639 N.E.2d 1355 (1994); or
the hilly, curvy road of Thompson v. County of Cook, 154 Ill. 2d
374, 609 N.E.2d 290 (1993). 
 In each of those cases, and in virtually all the "condition"
cases, a new and independent force broke the causal connection
between the original wrong and the injury itself. See Durbin v.
St. Louis Slag Products Co., 206 Ill. App. 3d 340, 357, 564
N.E.2d 242 (1990). The original wrong somehow became remote,
unimportant, a mere aside when considered against the new and
unforeseeable negligent conduct that is the immediate cause of
the injury.
 Here, a reasonable jury could find an unbroken causal
connection between the blocked intersection and the injury. If
so, the jury could consider that there may be more than one
proximate cause of the injury. Bentley v. Saunemin Township, 83
Ill. 2d 10, 17, 413 N.E.2d 1242 (1980).
 True, George foolishly rejected several safe routes for the
risky path he chose. But availability of another route, standing
alone, is not enough to erase the foreseeability of George
pursuing the path he traveled. See Dory v. Kovatchis, 196 Ill.
App. 3d 899, 554 N.E.2d 487 (1990).
 He could have waited the 40 seconds or so it would take for
the bus to clear the intersection. But a reasonable bus driver
might understand that in the life of a 12-year-old 40 seconds can
seem like a long time. That, too, is a matter for the jury to
consider. We see nothing in the cases that supports the CTA's
contention that George would have to be forced or compelled to
enter the intersection where he did before the necessary causal
connection can be found. At any rate, matters of comparative
negligence are not appropriately determined at this stage of the
proceedings. 
 It could be that George's conduct was the sole proximate
cause of his injury. Or maybe the car driver's conduct was the 
sole proximate cause of the injury. We believe these are matters
for a jury to determine. We cannot draw a bright line between
matters of fact and matters of law. Each case will turn on its 
own facts. This is a close case, but we are persuaded that the
question of whether the bus driver's conduct was a proximate 
cause of George Scerba's injury is a matter of fact for the
jury's determination.
CONCLUSION
 For the reasons stated, we affirm the grant of summary
judgment entered on behalf of the City of Chicago, but reverse
the summary judgment granted the CTA and remand that cause to the
trial court for further proceedings.
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 BUCKLEY and BRADEN, JJ., concur.