VITO MASOTTI, Plaintiff-Appellant, v. PETER T. CONSOLE *et al.*, Defendants-Appellees.

Second District   No. 2—89—0784

Opinion filed March 29, 1990.

Richard C. Gleason, of Edmund J. Scanlan, Ltd., of Chicago, for appellant.

D. Kendall Griffith, Richard W. Sandrok, Stephen R. Swofford, and Robert G. Black, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

JUSTICE INGLIS delivered the opinion of the court:
Plaintiff, Vito Masotti, appeals from an order of the circuit court granting summary judgment for defendants, Peter Console and Ganna

Construction Company. Plaintiff raises two issues on appeal: whether Peter, as the driver of a car, owed plaintiff a duty; and whether plaintiff's actions put his injury beyond the scope of that duty.

On November 13, 1987, plaintiff filed a negligence action against defendant Peter Console. Since both parties were minors, the suit was filed by plaintiff's mother, Anna Masotti, against Anna Console, Peter's mother. For convenience we refer to the real parties in interest simply as plaintiff and defendant. In the complaint, plaintiff alleged that in July 1986 plaintiff and Peter were in a parking lot, and Peter was the driver of a car in the lot. While the car was parked, plaintiff climbed on the hood of the car. Peter then started the car and accelerated and decelerated while plaintiff was still on the hood. Plaintiff alleged that Peter negligently started the car with plaintiff on it; operated the car at an unreasonable speed; failed to exercise due care to avoid a collision with plaintiff; increased the speed of the car when Peter knew that plaintiff was hanging onto the outside of the car; and applied the brakes while plaintiff was on the hood of the car. Plaintiff allegedly was injured as a result of these acts.

On January 9, 1989, plaintiff filed a second amended complaint adding an additional count naming Ganna Construction Company (Ganna) as party defendant. Plaintiff alleged that defendant Peter was employed by codefendant Ganna and was acting within the scope of his employment with Ganna at the time the alleged acts occurred.

Defendant Peter filed a motion for summary judgment. The motion itself was presented prior to the time the trial court granted plaintiff leave to file a second amended complaint; however, by order, the court allowed the motion to stand as to both defendants. In the motion, it was argued that plaintiff was injured when he engaged in "horseplay" and that under *Gould v. Spreitzer* (1986), 145 Ill. App. 3d 938, plaintiff could not recover because his injury was the foreseeable result of the horseplay. According to defendants, plaintiff's horseplay was the sole proximate cause of his injury and, therefore, defendants were entitled to judgment as a matter of law.

At the hearing on the motion for summary judgment, the parties introduced the deposition testimony of plaintiff, Peter, and three occurrence witnesses. Daniel Gravina, who was 11 years old at the time of the accident, testified that he, plaintiff, Peter and three other boys went rafting behind a shopping center. After they finished rafting, one of the boys, Mike Lombardo, went into the Butera food store to buy a can of pop. Plaintiff, Dan Console (Peter's brother), and Frank Lombardo (Mike's brother), went into the K mart to get a drink of water. Peter and Daniel got in the car. Mike came out of Butera,

while the other boys were still in K mart, and got into the car. Then, as a joke, Peter started driving the car away while plaintiff, Dan Console, and Frank came running towards it.

Frank reached the car first and while it was still moving, jumped up on the roof and hung onto the open sun roof. Peter stopped the car for a few seconds, and Dan Console and plaintiff caught up with the car. Plaintiff got on the hood of the car, and Dan Console climbed on the trunk. Peter closed the sun roof, so Frank got off the car, and Peter started driving. Daniel was unsure whether the car was completely stopped or was moving very slowly when Frank jumped off. The car then started to accelerate, and Daniel saw Frank and Dan Console standing off to the side. Plaintiff was still hanging onto the hood of the car on the passenger side. Plaintiff was smiling and "goofing off." Peter slowed and accelerated the car six to seven times, but did not hit the brakes. Peter drove in a straight line at approximately 15 miles per hour. After about two minutes, plaintiff got off; then Peter "slammed" on the brakes, and the car skidded.

Mike Lombardo was 13 years old at the time of the accident. He testified that when he returned to the car from Butera, he helped Peter and Daniel deflate the raft. Then he sat in the front passenger seat. Mike was reading a magazine when he heard the boys jumping on the car. Mike did not see plaintiff get on the car, but he did see plaintiff hanging onto the hood by the rim near the windshield wipers. Mike assumed that Dan Console jumped on the trunk of the car because he heard a bang there. According to Mike, when he heard the bang, the car was moving. Mike estimated that the car was going five miles per hour. Mike also testified that when Peter saw plaintiff on the hood, he stopped the car. Mike did not see plaintiff fall off the car, but he thought plaintiff fell when Peter slammed on the brakes suddenly, and Mike then saw plaintiff on the ground. Mike believed that Peter slammed on the brakes to get plaintiff off the car because plaintiff would not get off.

Frank Lombardo, who was 15 years old at the time of the accident, testified that when they left K mart, defendant Peter and the other boys began hurriedly packing up the rafts when they saw Frank, plaintiff and Dan Console coming. Frank believed that defendant was going to leave without them. The three boys ran to the car. Frank was unsure whether the car was moving when they reached it. Because the doors were locked, Frank jumped onto the side of the car and held onto the sun roof. Dan Console jumped on the trunk, and plaintiff jumped on the hood of the car. Frank thought the car was moving when they jumped on. Frank got off the car when Peter shut

the sun roof. Dan Console got off the trunk, but plaintiff remained lying on the hood. Frank testified that plaintiff was showing off by hanging onto the hood of the car, and Frank thought that plaintiff slid off when Peter hit the brakes, but he did not see plaintiff fall. Frank estimated that plaintiff was on the hood of the car for about 10 seconds and the car was moving at approximately five miles per hour.

Plaintiff, who was also 15 years old at the time of the accident, testified that he thought Peter was going to leave without him, Dan Console and Frank. According to plaintiff, the car was not moving when they jumped on it. After he, Frank, and Dan Console jumped on, Peter started the car and began to drive rather fast. Dan Console jumped off the trunk, but plaintiff held onto the rim by the windshield wipers because he did not want to fall off. Plaintiff testified that he did not think Peter would start driving while he was on the hood of the car. Peter then started swerving the car "back and forth," and plaintiff lost his balance and fell off, landing on his hands and one foot. Peter hit the brakes when plaintiff fell, but the car skidded and ran over his foot. Plaintiff estimated that from the time the car started moving to when he fell off, he had been on the hood for about 10 seconds.

Peter was 16 years old at the time of the accident. He testified that when he saw the boys running toward the car, he started driving it towards the west. Peter wanted the boys to catch up with the car, and they did. He stopped the car before the boys reached it. While it was stopped for a few seconds, Frank grabbed onto the sun roof; Dan Console jumped on the trunk, and plaintiff jumped onto the hood of the car. The doors were locked and all the windows were up. Peter believed that his brother slid off the trunk while the car was stationary because the trunk was slanted. Peter told Frank to get off the car or he would close the sun roof. When Peter closed the sun roof, Frank got off the car. Plaintiff was still on the hood when Peter began to drive. Peter's testimony was contradictory concerning whether he turned the car around to the east while plaintiff was on the hood, or whether he turned the car around before the boys reached it. In either case, Peter testified that the car was stopped when the boys got on it, and he had it in park. Peter stated that he did not turn the car while plaintiff was on it. Peter estimated that he was driving between 5 and 10 miles per hour when plaintiff was hanging onto the hood. Peter believed that plaintiff jumped off the car. As soon as plaintiff got off, Peter hit the brakes, but the car skidded on gravel for about five feet.

The trial court, in its memorandum opinion, quoted plaintiff's

deposition testimony in which plaintiff stated that he "jumped on top of the hood of the car," then fell off and his foot was run over, despite defendant hitting the brakes. The court stated:

"The threshold question in a negligence action is whether there is a duty of care owed by defendant to plaintiff. *** The existence and scope of a duty is an issue of law that must be decided by the court. Under the facts of this case, the relationship that existed between plaintiff and defendant and the conduct of the plaintiff raise[d] no duty upon defendant toward plaintiff."

The court accordingly entered summary judgment for defendants. Plaintiff filed a motion to reconsider the order of summary judgment, which the court denied. Plaintiff then filed this appeal.

■ ■ Plaintiff contends that the trial court erred in entering summary judgment based on its conclusion that Peter did not owe plaintiff a duty. Summary judgment is appropriate only if the pleadings, depositions, admissions on file, and affidavits show that there are no genuine issues of material fact. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) When determining whether to grant summary judgment, the court must construe the pleadings, depositions and affidavits strictly against the moving party. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 214.) In addition, the court must draw all reasonable inferences in favor of the opponent of the motion. (*Knief v. Sotos* (1989), 181 Ill. App. 3d 959, 963.) Summary judgment is a drastic remedy which should be granted only when the right of the moving party is free from doubt. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.

■ ■ Plaintiff argues that drivers of vehicles owe a common-law duty of reasonable care to pedestrians. (See W. Prosser, Torts §53, at 326 (4th ed. 1971).) Plaintiff also refers to the sections of the Illinois Vehicle Code (Code) as establishing duties of drivers. In particular, plaintiff cites section 11—803 of the Code, which requires that a driver not start a vehicle unless it is safe to do so (Ill. Rev. Stat. 1987, ch. 95½, par. 11—803); section 11—1003.1, which imposes a duty to exercise due care to avoid hitting pedestrians (Ill. Rev. Stat. 1987, ch. 95½, par. 11—1003.1); and section 11—601(a), which provides that drivers must not drive at a speed which endangers the safety of others (Ill. Rev. Stat. 1987, ch. 95½, par. 11—601(a)). Defendant argues that the last of these sections is inapplicable because there was no evidence of unreasonable speed. While the deposition testimony indicates that Peter was driving between 5 and 10 miles per hour, this is not dispositive of whether defendant Peter's speed was reasonable. *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023,

1028 (a person can be driving under the speed limit and still be driving too fast for conditions).

As for the other two cited sections, defendants argue that they are inapplicable because the accident occurred in a parking lot and not on the highway and because plaintiff was not a pedestrian. While the statute may be directed toward those driving on the highways, we see no reason why a driver's duty of reasonable care should dissolve upon entering a parking lot. In addition, defendants have cited no authority for the proposition that plaintiff was not a pedestrian, and defendants fail to explain why he should not be considered as such.

Defendants argue that Peter did not owe plaintiff a duty because Peter could not have reasonably foreseen that plaintiff would jump on the car while it was moving. This argument is flawed in two respects. First, it assumes that the car was moving when plaintiff jumped on it. Yet Peter, in his deposition testimony, admitted that the car was stopped when the boys jumped on it and that he started to drive with plaintiff on the hood. Second, this argument is based on the assumption that foreseeability is the most important element in determining whether there was a duty. However, we have held that "the imposition and scope of a legal duty is dependent not only on the factor of foreseeability but includes consideration of the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant." *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 192.

Further, the injury in this case was not, as defendants argue, totally unforeseeable. Teenagers frequently engage in horseplay in and around vehicles, jumping on the trunk or sitting on the hood of cars. Peter started the horseplay by pretending to drive off without the other boys, then waited for them to catch up to the car but had the doors locked and the windows up. Even if we assume that the car was moving when plaintiff jumped on it, defendant Peter could have foreseen that plaintiff would do so when Peter slowed the car. Moreover, if we believe plaintiff's version of the events, that the car was stopped when plaintiff jumped on and Peter began to drive after plaintiff was on the car, it is certainly foreseeable that plaintiff could fall off the car and sustain injuries if Peter moved the car.

Defendants argue that they are entitled to summary judgment because plaintiff's act of jumping on the car was the sole proximate cause of his injury, citing *Gould v. Spreitzer* (1986), 145 Ill. App. 3d 938. In *Gould*, the plaintiff and a friend rode in the bed of the defendant's truck while the defendant and another boy rode in the cab. On

the way to pick up another friend, the plaintiff began slapping or banging on the roof and side windows of the truck. The defendant responded to this "horsing around" by quickly turning the wheel of the truck back and forth several times. The plaintiff then fell from the truck and was injured. At the close of all the evidence, the plaintiff moved for a directed verdict, which the trial court denied. The case was submitted to the jury, and a verdict for the defendant was returned. The court denied the plaintiff's post-trial motions, and he appealed. *Gould*, 145 Ill. App. 3d at 939.

On appeal, we affirmed the trial court's finding that the jury's verdict for the defendant was supported by evidence that plaintiff's own negligent conduct was the proximate cause of his injury. (*Gould*, 145 Ill. App. 3d at 941.) We explained:

> "It was foreseeable, even considering plaintiff's young age [15], that the initiating of 'horseplay' with the defendant [age 17] might provoke some reaction by the latter. It was certainly foreseeable to plaintiff that standing in the bed of a moving truck without attempting to secure himself by holding onto some part of the truck might result in his being thrown off if the truck veered sharply for some reason." *Gould*, 145 Ill. App. 3d at 940.

*Gould* was an appeal after a jury's verdict, and the present appeal is from a summary judgment. The jury in *Gould* decided the issues of fact whereas, here, we must determine whether there are any issues of fact for the trier of fact to decide.

■■ ■ Unless the plaintiff fails to present any facts to support the assertion that the defendant proximately caused the plaintiff's injury (see *Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 69), the determination of proximate cause is a factual question which is decided by the trier of fact (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 393). Proximate cause is essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct. (*Gould*, 145 Ill. App. 3d at 940.) Thus, an injury will be found *not* to be within the scope of the defendant's duty if it appears "highly extraordinary" that the breach of the duty should have caused the particular injury. (Restatement (Second) of Torts §435 (1965).) The question then becomes whether the duty imposed was designed to protect that plaintiff from that particular injury. (Restatement (Second) of Torts §435, comment *c*, at 452 (1965).) If so, the injury is within the scope of the duty.

■■ As discussed previously, the injury here was not so highly

extraordinary that it should not be within the scope of Peter's duty to plaintiff. Peter's duty to operate his vehicle safely was designed to protect others from collision or injury because of his driving. Plaintiff's foot was run over after he fell from the moving car. Peter's duty was designed to protect plaintiff from being hit, run over, or otherwise injured as a result of Peter's operation of the vehicle.

■■ Defendants next argue that plaintiff's act of jumping on the car "removed any duty" from Peter. What defendants apparently are arguing is that since plaintiff was negligent, he cannot recover from defendants. If Illinois still adhered to the theory of contributory negligence, defendants would be correct. However, our supreme court in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, discarded the theory of contributory negligence and adopted the theory of comparative negligence. Thus, if plaintiff's conduct was negligent, the trier of fact will determine what percentage of fault, if any, is attributable to plaintiff and reduce the award accordingly. See *Diaz v. Chicago Transit Authority* (1988), 174 Ill. App. 3d 396, 400.

■■ The question of recovery and damages is, of course, dependent on a finding that Peter breached his duty to plaintiff and that breach was the cause in fact of plaintiff's injury. Such questions are matters for the trier of fact to determine. (*Kaplan v. Berger* (1989), 184 Ill. App. 3d 224, 233.) The testimony conflicted on the issue of whether the car was stationary or moving when plaintiff jumped on it. In addition, whether Peter deliberately slowed and accelerated the car to get plaintiff off the hood is also in dispute. These issues of fact relate directly to the determination of whether Peter breached his duty and whether plaintiff was negligent. We therefore conclude that the trial court erred in entering summary judgment for defendants.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

REINHARD and DUNN, JJ., concur.