# Illinois Official Reports

## Appellate Court

*Bell v. Bakus*, 2014 IL App (1st) 131043

| | |
|---|---|
| Appellate Court Caption | KHALIL BELL, a Minor by His Mother and Next Friend, Kimberly Street, Plaintiff-Appellant, v. HELEN BAKUS, ABNOEL BAKUS, and NIMO RASHO, Defendants-Appellees (Sam's Moving and Delivery, Inc., Defendant). |
| District & No. | First District, Second Division<br>Docket No. 1-13-1043 |
| Filed<br>Rehearing denied | August 5, 2014<br>August 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries suffered by the minor plaintiff when his shirt caught fire as he walked by the gas stove in his apartment that had burners turned on to provide warmth in the cold apartment, the trial court's entry of summary judgment for the owners and manager of the apartment on the ground that plaintiff failed to establish proximate cause because the placement of the stove next to the primary entry and exit to the kitchen was not the legal cause of plaintiff's injuries was reversed and the cause was remanded, since plaintiff presented sufficient evidence to show that the placement of the stove could have proximately caused plaintiff's injuries, especially in view of an architect's testimony that the stove's placement was hazardous and could have contributed to plaintiff's injuries, and under the circumstances, the issue of the stove's placement was for the trier of fact. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-5260; the Hon. Lynn M. Egan, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Law Offices of Jonathan P. Remijas, of Chicago (Jonathan P. Remijas, of counsel), for appellant.

Bruce Farrel Dorn & Associates, of Chicago (Ellen J. O'Rourke and Carol P. Woosley, of counsel), for appellees.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Simon and Pierce concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Khalil Bell, a minor, suffered burn injuries when his shirt caught on fire as he walked past the stove in the kitchen of his apartment. His mother, Kimberly Street, had turned on the burners of the stove because the apartment was cold. The stove bordered the primary hallway into and out of the kitchen, the same hallway Bell used when he caught on fire. Street filed a complaint for negligence on Bell's behalf against defendants Helen Bakus and Abnoel Bakus, who owned the apartment, and Nimo Rasho, the manager of the apartment.[1] Bell alleged that the placement of the stove, next to the primary entry and exit to the kitchen, caused his injuries. The circuit court granted defendants' motion for summary judgment, finding Bell did not establish proximate cause because the placement of the stove was not the legal cause of his injuries. At issue is whether the circuit court erred in granting defendants' motion for summary judgment. We hold Bell presented sufficient evidence that the placement of the stove could have proximately caused his injuries to defeat defendants' summary judgment motion.

¶ 2                                JURISDICTION

¶ 3    On February 25, 2013, the circuit court granted defendants' motion for summary judgment. On March 21, 2013, Bell timely filed his notice of appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                BACKGROUND

¶ 5    On March 10, 2008, Bell suffered burn injuries when his shirt caught on fire as he walked past the stove in the kitchen of his apartment in Des Plaines, Illinois. Bell's mother, Kimberly

---

[1]We will refer to defendants collectively as they have presented a unified defense, but will also refer to Helen Bakus and Nimo Rasho individually due to their roles in the facts of this case. Abnoel Bakus co-owned the property, but Helen Bakus testified that Abnoel had no involvement in the rental of the apartment.

Street, had turned on the burners of the stove because the apartment was cold. When he was injured, Bell was walking through the primary entrance and exit to the kitchen which abutted the stove. Street filed a negligence complaint on Bell's behalf against defendants, the owners and manager of the apartment. Bell alleged that prior to moving into the apartment, defendants had represented to Street that the apartment would be safe, habitable, and free from hazardous and dangerous conditions. Street had informed defendants that she would be providing her own gas range, and defendants assured her that they would unhook the prior tenant's range, install Street's range, and "prepare the appropriate counter space." Defendants failed to do so, and Street had an employee of the moving company that moved the family's possessions install her range.[2] Street contacted defendants after moving into the apartment and requested they provide heat and "install a counter to separate their gas range from the entrance/exit to the kitchen." Defendants agreed to this arrangement, but failed to do so before Bell was injured.

¶ 6        Bell alleged defendants owed him a duty of reasonable care and a duty to warn him of any dangerous conditions and to correct those conditions. Bell alleged defendants knew or should have known that the heat was not functioning and that there was no counter separating the gas range in the kitchen from the entry to the kitchen. The absence of a counter separating the gas range from the entry and exit to the kitchen violated common safety precautions and the gas range manufacturer's installation instructions. Bell further alleged defendants failed to properly inspect and prepare the apartment and allowed the gas range to be installed in an unsafe condition.

¶ 7        Defendants filed a motion for summary judgment, arguing they did not owe Bell a duty of care because there was no evidence that the stove's placement or lack of counter space presented an unreasonable risk of harm. Defendants further argued the stove's placement and lack of a countertop were not the proximate cause of Bell's injuries. Defendants alleged the sole proximate cause of Bell's injuries was that the burners on the stove were left on and uncovered while Street showered and did not attend to Bell. Defendants claimed that, at most, their alleged negligence only created a condition for, but did not cause, Bell's injuries. Defendants also disputed Bell's claims that they agreed to move the stove or place a new countertop in the kitchen. Defendants argued the lease they entered into with Street did not contain any such agreements.

¶ 8        As support for their motion, defendants attached depositions from Kimberly Street, Helen Bakus, and Nimo Rasho, as exhibits. In her deposition, Street stated when she first viewed the apartment, she had concerns with the placement of the stove "right off the hallway." She worried that "someone could *** knock [her] food off the stove or cough on [her] food as they coming through and things like that." She also described the stove's location as "weird" because "pots probably get knocked down, or somebody could burn their hand or something like that." She had never seen a kitchen arrangement like that before and asked Rasho, the manager of the building, if the stove could be moved. Rasho told her "that she could scoot it over on the same wall but *** further down." Rasho assured her that moving the stove would be "easy," and "that all they would have to do is move the pipes over, make a hole in the wall, and move pipes over." Street believed Rasho would move the stove and that a "counter would

_____

[2]Bell's complaint contained a count in negligence against the moving company, Sam's Moving and Delivery, Inc., but the circuit court dismissed this count. Sam's Moving and Delivery, Inc., is not a party to this appeal.

be placed on the opposite side of the stove." Street acknowledged she did not get anything in writing regarding changing the placement of the stove prior to her son becoming injured because she "took [Rasho's] word." Street signed a lease.

¶ 9 When Street moved into the apartment, none of the agreed-upon changes had occurred and the apartment had not been cleaned. She called Rasho to complain and she assured her that "everything would be all right." Street spoke to Rasho a week later and Rasho told her that she would come over and that "everything would be handled," including moving the gas line. Street also informed Rasho that the heat in the apartment was not working. Street testified Rasho began avoiding her calls and she did not actually make contact with Rasho until after Bell's injuries.

¶ 10 Street testified that on the day of the accident, she instructed her children, including Bell, to stay in their room while she took a shower across the hall. Street turned on two burners of the stove; the front left burner and the back right burner, because it was cold in the apartment. She warned her children not to go through the house and to stay in their room because the stove was on. She explained she "put *** pots of water on the stove so it can steam out." She estimated one of the pots "was probably 6 inches tall." After the water boiled, she took it off the flame and turned off the burner. She admitted that while she took a shower, the front left burner was left on without a pot covering it. The front left burner was the one closest to the hallway. Later during her deposition, she was less clear about which burner was left on, testifying: "I don't remember which [burner] it was. *** I know that I cut the water off. I thought that I cut the water off. And I cut–see, what I probably tried to do was cut–what I did do is cut the eye off with the water." After showering, Street went into her room. In her room, she heard screaming and saw the children running toward her. She saw fire on the bottom of Bell's shirt, which she put out. Bell was in the hospital for a little over a month due to his injuries.

¶ 11 After the accident, Street asked Helen Bakus to write her a note to give to the Department of Child and Family Services (DCFS) to show that the placement of the stove would be changed. Bakus agreed and signed a document that stated: " 'The counter that *** need[s] to be installed next to the stove in [Street's] apartment will be done this week.' " Street testified Rasho told her she was going to move the stove because of the accident. She also told Street she would fix the heat and install a break counter next to the stove. The agreed-upon repairs were never made.

¶ 12 Helen Bakus testified she owned the apartment and had never received any complaints from previous tenants regarding the heating or the placement of the stove. She denied that Street requested changes to the apartment. When Street moved in, the apartment was in good condition and the heat worked. Bakus paid her tenants' heating bills. Bakus agreed to write the letter to DCFS because she "felt sorry" for Street and thought DCFS would take Street's children away. She never installed the countertop because Street never called again.

¶ 13 Nimo Rasho testified she helped Bakus manage the apartment. Her duties included collecting rent, acting as the tenants' main contact person, and setting the heat for the entire building. She did not keep written records of tenant issues. Rasho testified Street never told her that she was bringing her own appliances. She also denied receiving calls from Street regarding the condition of the unit. She claimed Street told her Bell was burned when Street "was cooking and hot water f[e]ll or something like that." She could not recall if Street made any complaints to her after Bell's injury. When asked when she became aware that Street wanted a counter in between the stove and the hallway entrance to the kitchen, Rasho answered that she

could not recall. Rasho testified that the first time Street ever said anything to her regarding the location of the stove was on July 28, 2008.

¶ 14 In response, Bell argued that genuine issues of material fact existed as to whether defendants voluntarily assumed a duty to fix the placement of the stove and whether it was the proximate cause of his injuries. Bell disputed the significance of the alleged lease, arguing that Rasho verbally assured Street that the appropriate changes to the kitchen would be made. Additionally, Bell argued that the alleged lease was not signed by Street. Bell attached numerous exhibits to his response, including: a photograph of the kitchen showing the stove bordering the hallway entrance to the kitchen; the note signed by Helen Bakus, dated July 28, 2008, stating, "The counter that is needed to be installed next to the stove in [Street's] apartment will be done this week," the manufacturer's gas range instructions; the unsigned, alleged lease between the parties; Bell's deposition; and an affidavit from David Schroeder, a licensed architect.

¶ 15 Bell testified that prior to the accident, he was in his bedroom with his siblings cleaning the floor when he decided to get a broom in the kitchen. He testified:

> "I was walking to the kitchen then I turned back around to go get another shirt because it was cold then I was putting on my shirt then I went to go get the broom. And I got the broom and I was walking back to the room and then I saw my shirt on fire."

Bell recalled three of the stove's burners were turned on, all covered with pots. He did not know how he came into contact with the burners. When he walked by the stove, he could not see any fire outside of the pots. He testified his shirt was on his body as he walked by the stove. When he grabbed the broom, he had both of his arms in his sleeves. He could not recall if the broom caught on fire. When he discovered his shirt on fire, he ran into his brother's room and his brother tried to put it out. Eventually, his mother put the fire out. Bell recalled the landlord telling Street prior to the accident that she was going to fix the heat and that she would move the stove.

¶ 16 David Schroeder, a licensed architect, attested that he reviewed various documents, including photographs of the apartment's kitchen, installation instructions for the gas range, and safety and building codes. He described the kitchen as an "L-shaped kitchen with a gas range at the terminus of the small leg of the 'L' and the side of this gas range aligns with the primary circulation path leading to and from the kitchen to the rest of the apartment." He found this to be "an inherently dangerous design," an "unsafe practice," and a hazardous condition. Based on the installation instructions for the gas range, Schroeder opined that at least five inches of side wall on either side of the range was required. Schroeder stated that the stove's location "was a hazardous condition for those utilizing the primary/sole ingress and egress path to that kitchen given the increased likelihood of inadvertent contact with the range's flames during use." He found it likely that the stove's placement caused or contributed to Bell's shirt igniting as he walked past it. According to Schroeder, a proper break counter or safety barrier between the range and the hallway likely would have prevented the accident. He opined the gas range's location rendered the hallway entrance and exit to the kitchen "unsafe any time the range burners were in use."

¶ 17 In reply, defendants argued that the sole proximate cause of Bell's injuries was that one burner on the stove was left on and uncovered while Street showered. Defendants argued that this open flame broke any chain of causation and became the sole proximate cause of Bell's

injuries. Defendants further argued that the written lease contained no agreement to move the stove or install a break counter.

¶ 18    The circuit court granted defendant's motion for summary judgment. The circuit court first found that Bell pled sufficient facts to allege that defendants voluntarily assumed a duty to place the stove in a safer location but failed to do so. The circuit court also found, however, that Bell's claim failed because he could not establish the element of proximate cause as defendants' conduct was not the legal cause of Bell's injuries. The circuit court explained "the facts do not demonstrate that defendants' placement of the stove directly led to Bell's injuries. Rather, the action that initiated the chain of events leading to the accident was plaintiff's decision to leave one of the stove burners on while she took a shower." The court added that "the stove's location could not possibly have influenced plaintiff's decision to leave the stove unattended."

¶ 19                                    ANALYSIS

¶ 20    Bell argues he pled sufficient facts to establish defendants' negligence and preclude summary judgment. He stresses that he agrees with the circuit court's finding that defendants voluntarily undertook a duty of care in this matter when Rasho agreed to move the stove and install a break counter, but argues that the circuit court erred regarding its finding as to proximate cause. In response, defendants argue that the placement of the stove in the kitchen was not the proximate cause of Bell's injuries. Defendants maintain that the sole proximate cause of Bell's injuries was that the gas range had been left on with an uncovered flame. Defendants further argue that there was no agreement in the lease that they would move the stove or place a new countertop in the kitchen.

¶ 21    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). "Summary judgment is to be encouraged in the interest of prompt disposition of lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt." *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). The nonmoving party must present some factual basis that would arguably entitle it to a judgment. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996). In ruling on a motion for summary judgment, the circuit court is to determine whether a genuine issue of material fact exists, not try a question of fact. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Pleadings are to be liberally construed in favor of the nonmoving party. *Id.* "A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162-63 (2007). Our review of summary judgment rulings is *de novo*. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995).

¶ 22    A plaintiff alleging negligence "must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 82. The plaintiff in a negligence action has the burden of proving the elements of negligence throughout the entire proceeding. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 233 (2010).

¶ 23 The element of proximate cause itself contains two requirements: the cause in fact and the legal cause. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). "Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the plaintiff's injury." *Krywin*, 238 Ill. 2d at 226. "Under the substantial factor test, the defendant's conduct is a factual cause of the plaintiff's injury if the conduct was a material element and a substantial factor in bringing about the injury." *Lee*, 152 Ill. 2d at 455. "Conduct is a material element and a substantial factor if, absent the conduct, the injury would not have occurred." *Krywin*, 238 Ill. 2d at 226. Where reasonable minds could disagree on the outcome of the substantial factor test, it is for the jury to decide whether a defendant's conduct factored substantially in a plaintiff's injury. *Lee*, 152 Ill. 2d at 455. Our supreme court has defined the legal cause requirement of the element of proximate cause as follows:

"Legal cause 'is essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct.' [Citation.] Thus, an injury will be found not to be within the scope of the defendant's duty if it appears 'highly extraordinary' that the breach of the duty should have caused the particular injury. [Citation.]" *Id.* at 456.

¶ 24 The existence of a duty is a question of law for the court to decide under *de novo* review. *Bell v. Hutsell*, 2011 IL 110724, ¶ 11. The issues of breach of a duty and proximate cause, however, are factual matters for the trier of fact to decide. *Krywin*, 238 Ill. 2d at 226; *Lee*, 152 Ill. 2d at 454 (Questions regarding a breach of a duty and proximate cause of the injury are reserved for the trier of fact.). This court has held that there are instances where the issue of proximate cause can be determined as a matter of law on a summary judgment motion, but only "when the facts are so clearly one-sided that it can be said a party would never be able to recover." *Scerba v. City of Chicago*, 284 Ill. App. 3d 435, 439 (1996); *Lewis v. Chica Trucking, Inc.*, 409 Ill. App. 3d 240, 257 (2011).

¶ 25 Initially, we note that defendants acknowledge in their brief that the circuit court found they voluntarily assumed a duty of care. See *Jablonski*, 2011 IL 110096, ¶¶ 121-23; *Hutsell*, 2011 IL 110724, ¶¶ 12-13 (explaining the voluntary undertaking theory of liability). They do not, however, raise any argument addressing this issue either in their brief or by way of cross-appeal. Rather, they argue that the lease between the parties contains no express written agreement regarding the placement of the stove. The circuit court did not address this issue in its order. Bell did address this issue in his response to defendants' motion for summary judgment and pointed out that the alleged lease is not signed by Street. We have reviewed the record and found that Street did admit that she signed a lease. The alleged lease in the record, however, is not signed by her. Therefore, absent from the record is the alleged lease defendants rely upon to make this argument. We will not consider this argument because we cannot rely on matters outside of the record. *In re Marriage of Gulla*, 234 Ill. 2d 414, 422 (2009). We will also proceed under the assumption that Bell has pled sufficient facts to impose a duty upon defendants based on the voluntary undertaking theory of liability because defendants have not addressed the issue. This court has held that the failure to elaborate on an argument, cite persuasive and relevant authority, or present a well-reasoned argument results in waiver of that argument. *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009); *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010). Regardless, we have reviewed the circuit court's written order addressing defendants' voluntary undertaking of a duty and agree with its findings.

¶ 26    After reviewing the evidence in the light most favorable to Bell, the nonmoving party, we hold he presented sufficient evidence that the placement of the stove could have proximately caused his injuries. First, the following evidence shows the placement of the stove could have been the cause in fact of his injuries. Pictures of the kitchen show the stove bordering the primary entry and exit from the kitchen. David Schroeder confirmed the layout of the kitchen in his affidavit and opined that the stove's placement was hazardous. Schroeder noted that there should have been at least five inches of side wall bordering the stove and counter space. Schroeder concluded that it was likely that the stove placement contributed to Bell's injuries due to the likelihood of inadvertent contact with the flames from the range given its location next to the primary ingress and egress pathway to the kitchen. Bell testified he walked through the kitchen, grabbed the broom, and noticed his shirt was on fire while he was walking. Bell could not recall how he caught on fire or how he contacted the stove, but testified that three burners on the stove were turned on with pots covering them. Based on Bell's testimony and Schroeder's affidavit, Bell presented sufficient evidence that would allow a reasonable trier of fact to find that the placement of the stove was a material element and a substantial factor in Bell's injuries. *Lee*, 152 Ill. 2d at 455. Stated differently, had the stove been placed in a different spot than bordering the primary entrance and exit to the kitchen, we cannot say that Bell would have been burned as he walked through that hallway to retrieve a broom. *Krywin*, 238 Ill. 2d at 226 ("Conduct is a material element and a substantial factor if, absent the conduct, the injury would not have occurred."). Accordingly, Bell provided sufficient facts showing that the stove's placement could have been the cause in fact of his injuries.

¶ 27    Defendants rely on Street's testimony to argue that the cause in fact of Bell's injuries was that one of the burners, presumably the one that made contact with Bell, had been left open and uncovered. Street did testify, although not that clearly, that she may have left one burner turned on and uncovered. Bell, however, raised a genuine issue of material fact regarding whether any of the burners were left uncovered when he provided his own deposition where he stated that three burners were on and all were covered with pots. Furthermore, "[w]here reasonable minds could differ[ ] whether the defendant's conduct was of such a substantial factor in bringing about the plaintiff's injury is for the jury to decide." *Lee*, 152 Ill. 2d at 455. In this matter, reasonable minds could disagree on whether the stove's placement, with or without the burners being covered, was a substantial factor in Bell suffering burns as he walked in the kitchen. Accordingly, whether the stove's placement was the cause in fact of Bell's injuries is an issue for the trier of fact to decide.

¶ 28    In order to withstand summary judgment, Bell also had to provide evidence showing that the stove's placement was the legal cause of his injuries. We hold he has done so here. Specifically, a reasonable person could foresee that the stove's placement bordering the primary entry and exit to the kitchen could lead to the injuries Bell sustained. *Lee*, 152 Ill. 2d at 456 ("Legal cause 'is essentially a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct.' " (quoting *Masotti v. Console*, 195 Ill. App. 3d 838, 845 (1990))). To show this, Bell provided Schroeder's affidavit in which Schroeder attested that the stove's placement was "an inherently dangerous design" and a hazardous condition. Schroeder attested that the installation instructions for the gas range required at least a five-inch side wall on the side of the range. He attested further that "the failure to separate the outside corner of the gas range from the outside corner of the kitchen is an unsafe practice." Defendants' themselves even

provided evidence supporting the idea that the stove's placement was the legal cause of Bell's injuries when they attached Street's deposition to their motion. Street testified she wanted the stove moved away from the hallway. She found the stove's location "weird" and feared that pots could "get knocked down, or somebody could burn their hand or something like that." Based on Schroeder's affidavit and Street's testimony explaining why she wanted the stove moved away from the hallway, we hold Bell presented sufficient evidence to support his argument that the placement of the stove was also the legal cause of his injuries. Accordingly, we hold Bell presented sufficient evidence that the placement of the stove could have proximately caused his injuries to defeat defendants' summary judgment motion.

¶ 29    We also note that the circuit court, in its written order, found that it was "plaintiff's decision to leave one of the stove burners on while she took a shower." It appears the circuit court improperly referred to Bell's mother, Kimberly Street, as the plaintiff in this case. Street, however, filed suit on Bell's behalf due to Bell's status as a minor. Furthermore, it is also important to note that Street's alleged negligence cannot be imputed to her child, Bell. See *Sheley v. Guy*, 29 Ill. App. 3d 361, 366 (1975).

¶ 30                                                    CONCLUSION

¶ 31    The judgment of the circuit court of Cook County is reversed, and the cause is remanded.

¶ 32    Reversed and remanded.