2023 IL App (1st) 220105

FIRST DISTRICT
FIFTH DIVISION
November 17, 2023

Nos. 1-22-0105, 1-22-0234
Consolidated

| | | |
|---|---|---|
| *In re* COMMONWEALTH EDISON COMPANY ILLINOIS CONSUMER FRAUD LITIGATION | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Randall Kuhn, Robert Neiman, Erica Lieschke, Windward Roofing Construction, Inc.; In Demand Electronic Court Reporting, Inc.; and Standard Equipment Company, Done Deal Promotions, LLC; Fetterner Development and Construction Company; William Bryant; Jeff Gershman; and Vincent Maurici, | ) ) ) ) ) ) ) ) | No. 20 CH 5138 and No. 21 CH 5133  Appeal Nos. 1-22-0105 and 1-22-0234 (cons.) |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| Commonwealth Edison Company and Exelon Corporation, | ) ) ) | |
| Defendants-Appellees | ) ) ) | Honorable Cecilia A. Horan Judge Presiding. |
| TFO Golub Burnham LLC, d/b/a The Burnham Center; TFO Golub IT 2.0, LLC, d/b/a International Tower; Merchandise Mart LLC; South Branch LLC; Rockwell on the River LLC; Lawrence H. Gress; Steven Brooks; David Chavez; 1540 N. Milwaukee LLC, d/b/a Dstrkt Bar & Grill; Carmichael Leasing Company, Inc.; Anne Potter; Got It Maid, Inc.; Robert Dillon; Robin Hawkins; Robin's Nest; Scott Bahr; and David Sepkosi, on Behalf of Themselves and Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |

Nos. 1-22-0105, 1-22-0234 (Consol.)

Commonwealth Edison Company and Exelon )
Corporation, )
 )
          Defendants-Appellees). )

JUSTICE LYLE delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    On November 9, 2020, the plaintiffs-appellants in 1-22-0105, which included Randall Kuhn, who represented the class action as lead plaintiff, filed their consolidated second amended class action complaint against the defendants-appellees, Commonwealth Edison Company (ComEd) and Exelon Corporation (Exelon), in the circuit court of Cook County. On December 23, 2021, the trial court dismissed plaintiffs' second amended complaint with prejudice. On December 30, 2021, the plaintiffs filed a motion for reconsideration and for leave to file a third amended complaint. The trial court denied the motion. On October 7, 2021, the plaintiffs-appellants in 1-22-0234, which included TFO Golub Burham, LLC, doing business as The Burnham Center, who represented the class action as lead plaintiff, filed their complaint against the defendants. On February 16, 2022, the court entered an order dismissing the complaint with prejudice on the same grounds as the second amended complaint in 1-22-0105. Both appeals were consolidated in the appellate court prior to briefing. On appeal, plaintiffs argue that (1) they should have been allowed leave to file a third amended complaint, (2) the court erred in ruling that it lacked jurisdiction as a result of the separation of powers doctrine, and (3) plaintiffs adequately pled proximate cause. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    I. BACKGROUND

¶ 3      ComEd is the largest utility company in the State of Illinois, supplying approximately 70% of Illinois's population. It is a subsidiary of Exelon. Between 2011 and 2016, the Illinois General Assembly passed three bills, which financially benefited the defendants: (1) the Energy Infrastructure and Modernization Act (EIMA) (Pub. Act 97-616 (eff. Oct. 26, 2011); Pub. Act 97-646 (eff. Dec. 30, 2011)), (2) the EIMA Trailer Bill (Pub. Act 98-15 (eff. May 22, 2013)), and (3) the Future Energy Jobs Act (FEJA) (Pub. Act 99-906 (eff. June 1, 2017)). Subsequently, the United States Department of Justice investigated ComEd for bribery. On July 17, 2020, ComEd entered a deferred prosecution agreement (DPA) with the United States Department of Justice, admitting to the crime of bribery and agreed to pay a monetary penalty of $200,000,000. In the DPA, it stipulated that, between 2011 and 2019, ComEd made efforts to influence and reward former Illinois Speaker of the House of Representatives Michael Madigan, referred to as Public Official A in the DPA.[1] The DPA stated that ComEd understood that Public Official A "had substantial influence and control over fellow lawmakers concerning legislation, including legislation that affected ComEd." In 2011, the Illinois General Assembly (General Assembly) passed the EIMA, which "provided for a regulatory process through which ComEd was able to more reliably determine rates it could charge customers and, in turn, determine how much money it was able to generate from its operations to cover, among other things, costs for grid-infrastructure improvements." The DPA stated that the passage of the EIMA "helped improve ComEd's financial stability." After the EIMA passed in the Illinois House of Representatives, the Governor of the State of Illinois vetoed it. The governor's vote was overridden by the General Assembly.

---

[1]We will refer to him as Public Official A for consistency throughout the opinion.

¶ 4    In 2016, the General Assembly passed FEJA, which, according to the DPA, "provided for a renewal of the regulatory process that was beneficial to ComEd." "Beginning no later than in or around 2011, Public Official A and Individual A[2] sought to obtain from ComEd jobs, vendor subcontracts, and monetary payments association with those jobs and subcontracts for various associates of Public Official A, such as precinct captains *** within Public Official A's legislative district." Around 2011, a plan was developed "to direct money to two of Public Official A's associates by having ComEd pay them indirectly as subcontractors to Consultant 1."[3] These payments "continued until in or around 2019, even though those associates did little or no work during that period." Consultant 1 and their company "did little, if anything, to direct or supervise the activities of Public Official A's associates, even though they were subcontracted under and received payments through Company 1." Consultant 1 "executed written contracts and submitted invoices to ComEd [to appear they were] in return for Consultant 1's advice on 'legislative issues' and 'legislative risk management activities,' *** when in fact a portion of the compensation paid to Company 1 was intended for ultimate payment to Public Official A's associates." Since Public A's associates were paid through Company 1 over the course of eight years, the payments "were not reflected in the vendor payment system used by ComEd." "Certain senior executives and agents of ComEd were aware of these payments from their inception until they were discontinued in or around 2019." "In or around May 2018, Public Official A, through Individual A, asked CEO-1 to hire a political ally of Public Official A who was retiring from the Chicago City Council at the end of the month." ComEd agreed to pay the former city council member "$5,000 a month

_____

[2]Individual A is a former member of the Illinois House of Representatives for approximately 10 years beginning in 1972.
    [3]Consultant 1 is the owner of a company (Company 1), which performs consulting services for ComEd.

indirectly as a subcontractor through Company 1." "ComEd acknowledge[d] that the reasonably foreseeable anticipated benefits to ComEd of such litigation [as EIMA and FEJA] exceeded $150,000,000."

¶ 5    On August 18, 2020, William Bryant, Jeff Gershman, and Vincent Maurici, three of the plaintiffs in 1-22-0105, filed a class action complaint against the defendants, asserting that they obtained the General Assembly's passage of legislation through bribes. The plaintiffs alleged that ComEd perpetrated a fraud of the citizens of Illinois and asked for restitution for ComEd's Illinois customers for the unjust enrichment of ComEd caused by the passage of EIMA and FEJA.

¶ 6    On August 27, 2020, William Bryant and the other plaintiffs in that litigation filed an agreed motion to consolidate their case with Mr. Kuhn's class action complaint, due to the similarity in claims and parties. On August 28, 2020, the trial court granted the motion to consolidate. On September 22, 2020, the plaintiffs filed a motion for leave to amend to merge the factual allegations of the cases that were consolidated.

¶ 7    On December 1, 2020, the plaintiffs in 1-22-0105 filed their consolidated second[4] amended class action complaint. In the complaint, the plaintiffs alleged that ComEd bribed legislators, leading to favorable legislation for ComEd. The plaintiffs alleged that those actions, which were also contained in the attached DPA exhibit, were fraudulent, violated the Public Utilities Act (220 ILCS 5/5-201) (West 2020)), and caused the unjust enrichment of the defendants.

¶ 8    On January 11, 2021, the defendants filed their motion to dismiss the second amended complaint. In their motion to dismiss, the defendants alleged that the trial court did not have jurisdiction over the claims in the complaint, since the Illinois Commerce Commission approved

_____

[4]This was the first complaint filed after the cases were consolidated.

the charged rates. They argued that the filed rate doctrine barred the trial court from issuing an order inconsistent with a utility tariff or, in other words, inconsistent with the rates and charges with respect to services. The defendants argued that if a plaintiff argues that a utility company has charged too much for a service, the ICC has exclusive jurisdiction over that matter. Additionally, they argued that the separation of powers doctrine barred the trial court from considering the motivations of the Illinois General Assembly when passing the legislation, and thus, the court did not have jurisdiction.

¶ 9    On September 16, 2021, the trial court considered the motion to dismiss the second amended complaint. The court stated it would not consider the filed rate doctrine since it was an affirmative defense. However, the court granted the plaintiffs' motion to file a surreply.

¶ 10    On December 23, 2021, after the surreply was filed, the trial court considered the motion to dismiss. In its written order, the court stated that it would not consider the filed rate doctrine. The court examined whether there was a separation of powers issue that would divest the court of jurisdiction to consider the complaint. The trial court stated that, while the complaint's allegations "tiptoe[d] around implicating the legislative process in the enactment of EIMA and FEJA," to proceed on the claims, the plaintiffs would have to show a nexus between the bribes to Public Official A and the passage of the legislation, which would implicate the legislative process. The court next considered whether such scrutiny of the legislative process violated the separation of powers. The court explained that the separation of powers principle "precludes judicial review of the motives and mental processes that underlie legislative action." It found that, since the plaintiffs' claims necessarily required the court to invade the province of the legislature's motivations for passing the bills, the court lacked jurisdiction and dismissed the complaint with prejudice.

¶ 11    The plaintiffs in 1-22-0105 filed a motion to reconsider and for leave to file an amended complaint. In the motion, the plaintiffs requested that the court reconsider its decision to dismiss with prejudice, since the attached proposed third amended complaint allegedly resolved the jurisdictional issue by focusing solely on the actions of Public Official A.

¶ 12    On January 21, 2022, the trial court conducted a brief hearing on the motion to reconsider. After arguments, the court issued an oral ruling stating it would consider the argument by plaintiffs, overlooking the question of whether they complied with the standards for a motion for reconsideration. The court denied the motion and stated that plaintiffs' argument that the court could grant relief based on ComEd's actions toward a single politician without having to invade the province of the legislative process was erroneous. On January 25, 2022, the plaintiffs filed their notice of appeal in 1-22-0105.

¶ 13    On October 7, 2021, the plaintiffs in 1-22-0234 filed their class action complaint against the defendants, alleging that the defendants bribed Public Official A to garner votes to pass legislation, the three bills implicated in 1-22-0105, which benefitted defendants to the detriment of Illinois residents, which included the class action members. On February 16, 2022, the trial court entered its order dismissing the complaint with prejudice on the same grounds as the second amended complaint in 1-22-0105. On February 22, 2022, the plaintiffs filed their notice of appeal in 1-22-0234.

¶ 14    On March 16, 2022, the plaintiffs in 1-22-0105 filed a motion to consolidate their appeal with the plaintiffs in 1-22-0234. The plaintiffs in 1-22-0234 filed a response agreeing that consolidation was appropriate, and this court granted the motion to consolidate on March 21, 2022.

¶ 15                                    II. ANALYSIS

¶ 16     We note that we have jurisdiction to consider this matter, as the plaintiffs in both appeals

filed timely notices of appeal following the trial court's judgment. See Ill. S. Ct. R. 301 (eff. Feb.

1, 1994); R. 303 (eff. July 1, 2017).

¶ 17     On appeal, the plaintiffs assert multiple grounds that can essentially be filtered into a single

argument. The plaintiffs argue that the trial court should have considered their motion for leave to

amend the complaint and that if the court allowed them to amend their complaint, the court would

not have dismissed their complaint with prejudice. They assert that the court dismissed their

complaint with prejudice because it thought that they would not be able to show that ComEd's

actions caused the passage of the legislation without inquiring into the legislature's motivations.

¶ 18     A motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS

5/2-619 (West 2020)) admits the legal sufficiency of the pleadings but asserts certain defects or

defenses. *Duncan v. FedEx Office & Print Services, Inc.*, 2019 IL App (1st) 180857, ¶ 10. "The

purpose of a motion to reconsider is to bring to a court's attention: (1) newly discovered evidence;

(2) changes in the law; or (3) errors in the court's previous application of existing law." *Liceaga

v. Baez*, 2019 IL App (1st) 181170, ¶ 25. A motion for reconsideration "is not the place to raise a

new legal theory or factual argument." *Liceaga*, 2019 IL App (1st) 181170, ¶ 25. "As a result,

legal theories and factual arguments not previously made are subject to waiver." *Liceaga*, 2019 IL

App (1st) 181170, ¶ 25.

¶ 19     Our standard of review for a motion to reconsider is determined by the basis of the motion.

*Spencer v. Strenger Wayne*, 2017 IL App (2d) 160801, ¶ 25. If the motion was based on new

matters, whether additional facts or new legal theories, the standard of review is abuse of

discretion. *Spencer*, 2017 IL App (2d) 160801, ¶ 25. "Where the motion was based only on the

trial court's application or misapplication of existing law, we review *de novo* the trial court's decision to grant or deny the motion." *Spencer*, 2017 IL App (2d) 160801, ¶ 25.

¶ 20    As the plaintiffs explain in their brief, they are not challenging the grounds on which the trial court dismissed the amended complaint. Their dispute is only that the court erred by dismissing with prejudice. The plaintiffs assert that they could have amended the factual allegations in their complaint in a way that did not run afoul of the separation of powers doctrine by focusing solely on the actions by the former Illinois Speaker of the House of Representatives. The plaintiffs recite the factors a court should consider when determining if it should grant a motion for leave to amend a complaint. However, the dismissal with prejudice was a final order. As a result, it was procedurally improper for the court to consider whether an amended complaint would cure purported defects prior to granting the motion for reconsideration. See *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 14 (stating that the factors that a court should consider when deciding to grant leave to amend "apply only to amendments that have been proposed prior to final judgment. After final judgment, a plaintiff has no statutory right to amend a complaint and a court commits no error by denying a motion for leave to amend.").

¶ 21    Despite plaintiffs' assertions to the contrary, the dismissal and our review of the dismissal is based on the complaint that was dismissed, and not on the complaint the plaintiffs sought leave to file. "The trial court proceeding is not a practice round," and "[a] motion to reconsider is not the place for the inclusion of new arguments that could have been raised earlier." *Liceaga*, 2019 IL App (1st) 181170, ¶ 28. Since by their own admission, the plaintiffs are trying to change the factual allegations, from which the court dismissed the petition, the argument is waived. *Liceaga*, 2019 IL App (1st) 181170, ¶ 25. Therefore, we affirm the trial court's judgment that the trial court lacked jurisdiction to consider the matter.

¶ 22    If we were to look at plaintiffs' appeal liberally, reading it as a challenge to the trial court's application of existing law, the plaintiffs' arguments still fail. Under that assertion, our standard of review is *de novo*, which means we show no deference to the trial court's ruling. *Omega Demolition Corp. v. Illinois State Toll Highway Authority*, 2022 IL App (1st) 210158, ¶ 36. However, as stated, we cannot look at the third amended complaint but can only review the complaint that was filed prior to the dismissal.

¶ 23    " '[A] proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause.' " *Calloway v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 112746, ¶ 77 (quoting *Kleen v. Homak Manufacturing Co.*, 321 Ill. App. 3d 639, 641 (2001)). If the alleged cause "does nothing more than furnish a condition which made the injury possible and that condition causes an injury by the subsequent independent act of a third party, the creation of that condition is not the proximate cause of the injury." *Kemp v. Sisters of the Third Order of St. Francis*, 143 Ill. App. 3d 360, 361 (1986). "The term 'proximate cause' describes two distinct requirements: cause in fact and legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). "Cause in fact can only be established when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Lee*, 152 Ill. 2d at 455. Using the substantial factor test, a "defendant's conduct is a factual cause of the plaintiff's injury if the conduct was a material element and a substantial factor in bringing about the injury." *Lee*, 152 Ill. 2d at 455. "A defendant's acts are a legal cause only if they are 'so closely tied to the plaintiff's injury that he should be held legally responsible for it.' " (Emphasis omitted.) *Simmons v. Garces*, 198 Ill. 2d 541, 558 (2002) (quoting *McCraw v. Cegielski*, 287 Ill. App. 3d 871, 873 (1996)). "Legal cause 'is essentially a question of

foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct.' " *Lee*, 152 Ill. 2d at 456 (quoting *Masotti v. Console*, 195 Ill. App. 3d 838, 845 (1990)).

¶ 24    In the second amended complaint, the plaintiffs argued that the DPA showed an illegal scheme in which elected officials, primarily Public Official A, were incentivized by ComEd to pass legislation that benefitted the defendants. That argument squarely asks the question of the legislators' motivations to pass the bills in question. "It is a well known rule of law that the knowledge and good faith of a Legislature are not open to question and its motives cannot be inquired into. Courts must always assume that the legislative discretion has been properly exercised." *Murphy v. Chicago, Rock Island & Pacific Ry. Co.*, 247 Ill. 614, 619 (1910); see *Fletcher v. Peck*, 10 U.S. 87, 131 (1810) ("[A] court, sitting as a court of law, cannot sustain a suit brought by one individual against another founded on the allegation that the act is a nullity, in consequence of the impure motives which influenced certain members of the legislature which passed the law."). While the plaintiffs argue that the legislators' motivation for their actions does not affect whether ComEd's bribe proximately caused the passage of the legislation, it must be considered whether it operated as an intervening cause. While Public Official A, as speaker of the House, had the ability to bring a bill to the floor, the bill had to garner the necessary votes for it to pass. Merely creating the condition for the injury, the bribe, without more information, cannot be said to have been the proximate cause for the passage of legislation. See *Kemp*, 143 Ill. App. 3d at 361. We do not find that the bribe to Public Official A's associates, without more, was a material element in causing the injury to the plaintiffs. Additionally, with the allegations as pleaded, we cannot ascertain whether there were any intervening causes for the injury, which broke the nexus between the bribe of Public Official A and the passage of the legislation. *Lee*, 152 Ill. 2d at 455. It

is possible that such a nexus exists; however, to find such a nexus, the court would have to investigate the reason the General Assembly voted to pass the bill. As a result, the trial court could not consider whether the alleged impure motivations of the legislature led to the passage of the three bills that plaintiffs challenge. We, accordingly, find that the trial court did not err by dismissing the plaintiffs' complaint.

¶ 25 Assuming *arguendo* that we considered the argument in the third amended complaint, which would have focused solely on the actions of Public Official A, the former Illinois Speaker of the House of Representatives, the decision would remain the same. The plaintiffs allege that Public Official A previously blocked legislation from ComEd before the plan to incentivize him and that he stated behind closed doors that unrelated bills from other legislators would not make it to the floor without their vote in approval of the ComEd bills in question. However, even taking those allegations as true, Public Official A could not singlehandedly pass the bills; he needed other legislators to vote to pass the bill. Once the process involved the rest of the legislature, the only way to grant relief was to necessarily look to the motivations of the legislature to determine if the illegal incentives—instead of a legitimate consideration—convinced the legislature to pass the bills. The trial court correctly determined that there was no avenue for the plaintiffs to allege causation without asking for the court to invade the province of the legislature and appropriately dismissed the complaint with prejudice. Accordingly, we affirm the judgment of the trial court.

¶ 26                                III. CONCLUSION

¶ 27 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28 Affirmed.

Nos. 1-22-0105, 1-22-0234 (Consol.)

---

*In re Commonwealth Edison Co. Illinois Consumer Fraud Litigation*,
**2023 IL App (1st) 220105**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 20-CH-5138, 21-CH-5133; the Hon. Cecilia A. Horan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Adam J. Levitt, John E. Tangren, and Mark S. Hamill, of DiCello Levitt Gutzler LLC, Stephan D. Blandin and Michael E. Holden, of Romanucci & Blandin, LLC, and Steven A. Hart, Brian Eldridge, and Carter D. Grant, of Hart McLaughlin & Eldridge, LLC, all of Chicago, and Michael W. Rathsack, of Park Ridge, for appellants Randall Kuhn, Erica Lieschke, Windward Roofing & Construction, Inc., In Demand Electronic Court Reporting, Inc., Standard Equipment Company, Done Deal Promotions, LLC, Fettner Development and Construction Company, William Bryant, Jeff Gershman, and Vincent Maurici. |
| | No brief filed for other appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Terrence J. Truax, Nicole A. Allen, and Ali I. Alsarraf, of Jenner & Block LLP, of Chicago, and Matthew E. Price (*pro hac vice*), of Jenner & Block LLP, of Washington D.C., for appellees. |

---